**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 25 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

|  |  |
|---|---|
| STATE OF UTAH, | |
| Plaintiff-Appellant, | |
| and | |
| HERMAN BAHE; MARVIN R. WASH; LESTER WASH; DENISE WASH; STEPHANIE E. VIGIL; DIANE EAGLE TOM; LINDA CLOVER RIVERA; MARLINDA MOON; EDGAR MOON; DELFORD MOON; ADRIAN MOON; LENA KNIGHT; ELDON KNIGHT; EDITH KNIGHT; LESLIE DAWN EAGLE; KENNETH W. EAGLE; EDWIN CLOVER; VERN BEAR; TYRONE BULLCREEK; MARGENE BULLCREEK; LISA BULLCREEK; DAVID BULLCREEK; ABBY BULLCREEK; COLLEEN BLACKBEAR; SAMMY BLACKBEAR, SR.; UNITED STATES OF AMERICA, | |
| Plaintiffs, | |
| v. | No. 99-4104 |
| UNITED STATES DEPARTMENT OF THE INTERIOR; BUREAU OF INDIAN AFFAIRS; PHOENIX AREA DIRECTOR, Bureau of Indian Affairs; SUPERINTENDENT OF UINTAH AND OURAY AGENCY, Bureau of Indian Affairs, | |
| Defendants-Appellees, | |

PRIVATE FUEL STORAGE,

      Defendant-Intervenor-Appellee,

  and

DAVID L. ALLISON; WAYNE
NORDWALL; BRUCE BABBIT,

      Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 98-CV-380-K)

---

Philip C. Pugsley, Assistant Attorney General, State of Utah, (Jan Graham, Attorney General, State of Utah, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellant.

Robert H. Oakley, Environmental & Natural Resources Division, Department of Justice, (Lois Schiffer, Assistant Attorney General, John A. Bryson, Environmental & Natural Resources Division, Department of Justice, with him on the brief),Washington, D.C., for Defendants-Appellees.

Margaret A. Swimmer of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., (Val R. Antczak and J. Michael Bailey of Parsons Behle & Latimer, Salt Lake City, Utah, with her on the brief), Tulsa, Oklahoma, for Defendant-Intervenor-Appellee.

---

Before **TACHA**, **BALDOCK**, and **BRORBY**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

The State of Utah filed an action in federal district court seeking to intervene in a lease approval process between an Indian tribe and a private party. The district court concluded the State lacked standing and granted Defendant's motion for summary judgment. The State appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo and conclude the action is not yet ripe for judicial review. See U.S. West Inc. v. Tristani, 182 F.3d 1202, 1208 (10th Cir. 1999).

I.

In May 1996, the Skull Valley Band of Goshute Indians (the Band), a federally-recognized Indian tribe, and Defendant-Intervenor Private Fuel Storage (PFS) began negotiations for the lease of lands within the Skull Valley Reservation. The United States holds the lands in trust for the Band. PFS intends to construct and operate a temporary storage facility for high-level nuclear waste on the lands.

Pursuant to 25 U.S.C. § 415(a), the Secretary of the Interior must approve any lease of Indian trust lands. Section 415(a) requires the Secretary of the Interior to:

> first satisfy himself that adequate consideration has been given to the relationship between the use of the leased lands and the use of neighboring lands; the height, quality, and safety of any structures or other facilities to be constructed on such lands; the availability of police and fire protection and other services; the availability of judicial forums for all criminal and civil causes arising on the leased lands; and the effect on the environment of the uses to which the leased lands will be subject.

As required by § 415(a), the Band submitted the proposed lease with PFS to the Bureau of Indian Affairs (BIA).

The BIA Superintendent of the Uintah and Ouray Reservation (Superintendent), acting under authority delegated to him by the Secretary of the Interior, conditionally approved the lease. The Superintendent conditioned his approval of the lease (1) upon the successful completion of an environmental impact statement (EIS) evaluating the environmental impacts of the lease in accordance with the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C), and (2) upon the issuance of a license by the Nuclear Regulatory Commission (NRC).

The NRC is performing the NEPA review as the lead agency in conjunction with its licensing proceedings. The State sought to intervene in the NRC's EIS and licensing proceedings and was admitted as a party. The State also sought to intervene in the lease approval process before the Superintendent, who determined that the State did not have standing. That decision was upheld on appeal to the Area Director of the BIA's Phoenix Area Office and to the Interior Board of Indian Appeals.

In the course of the § 415(a) lease approval proceedings, the State requested from the BIA, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, certain documents, including a copy of the lease. The BIA provided a copy of the lease, but redacted certain information regarding financial and other terms on the ground that the redacted portions fell within the FOIA exemption for protected commercial and financial information. 5 U.S.C. § 522(b)(4).

The State subsequently filed a complaint in federal district court against the BIA

and others challenging the BIA's refusal to permit the State to intervene and participate in the lease approval process. Specifically, the State sought: (1) reversal of the BIA's determination that the State lacks standing to intervene, (2) a declaratory judgment requiring the BIA to include the State as a full participant in any remaining lease approval proceedings, and (3) production by the BIA of the redacted portions of the lease. PFS, the lessee of the Lease, which the State did not name as a Defendant, successfully moved to intervene.

## II.

Defendants argue this suit is nonjusticiable both because the State lacks standing to bring this case and because the issue is not yet ripe for adjudication.[1] Defendants contend the State's claims are not ripe because NRC has not completed the EIS or issued PFS a license to operate the proposed facility. Because the EIS and license are conditions precedent to further lease review, Defendants argue the § 415(a) lease approval review in which the State seeks to intervene may never occur. We conclude that the dispute is not justiciable, because it is not ripe for court review.[2]

---

[1] Defendants did not raise the ripeness issue in the district court. The ripeness doctrine, however, "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 58 n.18 (1993). Accordingly, ripeness can be raised at any time, even by the court sua sponte for the first time on appeal. Thomas v. New York, 143 F.3d 31, 34 (2d Cir. 1998); see also Norvell v. Sangre de Cristo Dev. Co., 519 F.2d 370, 375 (10th Cir. 1975).

[2] We do not address the State's standing to maintain this suit. See Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726 (1998) (resolving ripeness issue and declining to

The "basic rationale" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). When assessing ripeness, we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149. The Supreme Court has listed the following considerations for evaluating ripeness: (1) whether delayed review would cause hardship to the plaintiff, (2) whether judicial intervention would inappropriately interfere with further administrative action, and (3) whether the courts would benefit from further factual development of the issues presented. Ohio Forestry, 523 U.S. at 733.

In Ohio Forestry, the Supreme Court considered the ripeness of the Sierra Club's challenge to the lawfulness of a federal land and resource management plan which the United States Forest Service had adopted. The Court noted that while the plan set logging goals, selected the areas of the forest suitable for timber production, and determined appropriate methods of timber harvest, it did not itself authorize the cutting of any trees. Id. at 729. Before the Forest Service could permit logging, it had to pass through several

---

address standing where both standing and ripeness challenged).

steps, including (1) providing those affected by the proposed logging notice and an opportunity to be heard, (2) completing an environmental analysis pursuant to NEPA, (3) rendering a final decision to permit logging, (4) and justifying the proposal in court if challenged. Id. at 729-30. Accordingly, the Court concluded the Sierra Club's challenge was not ripe because the plan did not inflict significant practical harm upon the interests that the Sierra Club advanced. Id. at 733.

Like the Sierra Club in Ohio Forestry, the State of Utah will not suffer significant hardship if we withhold court consideration of its claims at this time. The State seeks to intervene in the lease approval process to ensure that the Superintendent considers environmental factors as required by § 415(a). The State will have ample opportunity to raise its environmental concerns during both the NRC's environmental review process and the licensing process in which it has been permitted to intervene. Consequently, the State need not participate in the lease approval process to present its concerns. In fact, NEPA's scope of review significantly exceeds that required by § 415(a). In Davis v. Morton, 469 F.2d 593, 598 (10th Cir. 1972), we noted that NEPA is a very broad statute covering both substantive and procedural problems relating to the environment. On the other hand, § 415(a) discusses the environmental problem only briefly, requires only that the Secretary satisfy himself on the environmental issue, and does not set out any specific procedural guidelines as does NEPA. Id. Because the NRC must examine environmental concerns more rigorously in the NEPA proceedings than the BIA does in its subsequent

7

§ 415(a) lease review, the State will suffer no hardship by the denial of review at this time.

Nevertheless, the State claims that participation in the NRC proceedings is no substitute for intervention in the § 415(a) lease approval process. The State argues the NRC impermissibly limited the scope of its NEPA review and only through participation in the lease approval process will the State be able to ensure that the NRC considers certain environmental issues. Despite the State's protestations, judicial review of final agency action under the Administrative Procedure Act, 5 U.S.C. § 702, rather than intervention in the § 415(a) lease approval process, provides the proper procedure to challenge the sufficiency of an EIS.[3] See Lujan v. National Wildlife Federation, 497 U.S. 871, 882 (1990); Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 448 (10th Cir. 1996).

While judicial intervention would probably not inappropriately interfere with further administrative action, we would benefit from further factual development of the issues presented. We considered the need for further factual development when evaluating the ripeness doctrine in the context of a lease of Indian land in Norvell v.

---

[3] The State concedes that "[i]f the [NRC] review which is presently underway were broad and comprehensive in its scope, the State would be hard pressed to complain about not having been given the chance for the kind of participation that is a well-established part of the NEPA process." (App. Br. at 44.) The State apparently seeks intervention in the § 415(a) lease approval process as a means to circumvent the NRC's decision to limit its NEPA review.

8

Sangre de Cristo Dev. Co., 519 F.2d 370 (10th Cir. 1975). In Norvell, the State of New Mexico sought to assert jurisdiction over a lessee of Indian land and its activities under the lease. While the Norvell litigation was pending, we enjoined any activities under the lease because the parties had not complied with NEPA, and ordered the BIA to conduct an EIS. Davis v. Morton, 469 F.2d at 597-98. When the Norvell appeal subsequently reached us, we held that the case was not ripe because all activities under the lease were in limbo pending compliance with NEPA and a possibility existed that the project would not meet the requirements of NEPA. Norvell, 519 F.2d at 377-79. Accordingly, the action did not present a justiciable case or controversy. Id. at 377. Further, the possibility of the project's disapproval as a result of ongoing review rendered the action improper for declaratory disposition. Id. at 378-79.

Concluding the action was not ripe, we stated: "The subject 99-year lease has not been approved [or] measured by NEPA requirements and it is speculative when or conceivably whether it shall meet NEPA requirements." Id. at 375. Additionally, we noted: "[W]e do not know whether the development project shall go forward or, if ultimately authorized following the environmental considerations, the precise activities which may be permitted on the leased lands." Id. at 376. We concluded that "[n]o significant hardship will accrue to the State of New Mexico" because the "State can do no more than presently allege that if the project is approved and developed, it may fall within the statutory ambits. Such is insufficient to meet the case or controversy tests." Id.

9

Similarly, the State of Utah will suffer no significant hardship because the State can do no more than presently allege that if the lease is approved and the facility developed, it may detrimentally impact the environment. The State's claimed harms are contingent, not certain or immediate. See Texas v. United States, 523 U.S. 296, 300 (1998) (claim not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all). We cannot be certain whether the EIS will show that the project presents unacceptable risks, whether the NRC will issue a license to PFS or, if ultimately authorized following the environmental considerations, the precise activities which may be permitted on the leased lands. Accordingly, we conclude the State's suit is not ripe for review.

AFFIRMED.