Dr. Valerie S. SCHWOB, Plaintiff–Appellant,

v.

STANDARD INSURANCE COMPANY, Defendant–Appellee.

No. 01–6168.

United States Court of Appeals, Tenth Circuit.

June 12, 2002.

Before HENRY, Circuit Judge, BRORBY, Senior Circuit Judge, and BRISCOE, Circuit Judge.

## ORDER AND JUDGMENT[*]

BRORBY, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Valerie S. Schwob appeals the district court's entry of summary judgment in favor of defendant Standard Insurance Company (Standard) on her claim for disability benefits under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). We hold that the district court lacked subject matter jurisdiction over plaintiff's claim for disability benefits. Accordingly, we vacate the summary judgment entered in favor of Standard and remand this case to the district court with instructions for the court to dismiss the case without prejudice.

## I.

Plaintiff worked as a pathologist for Urocor, Inc. from June 1995 until October 1997 when she resigned from her position for health reasons. Standard had issued a group long-term disability insurance policy to Urocor to fund disability benefits for its employees under an employee welfare benefits plan governed by ERISA. Standard was both the administrator and insurer of the plan, and plaintiff was an eligible employee under the plan. .

In December 1997, plaintiff submitted a claim to Standard for long-term disability benefits, alleging that she was disabled as a result of neurological problems caused by Lyme disease and a co-infection with babesiosis. In support of her claimed disability, plaintiff submitted statements from three of her treating physicians. Under the terms of Standard's insurance policy, plaintiff was entitled to long-term disability benefits "if, as a result of Physical Disease, Mental Disorder, Injury or Pregnancy, [she was] unable to perform with reasonable continuity the material duties of [her] own occupation." Aplt.App., Vol. II at SI–00001, SI–00022. However, in the case of mental disorders, the policy limits the payment of benefits to a period of twenty-four months. *Id.* at SI–00001, SI–00029.

Standard retained two separate doctors to perform independent medical examinations of plaintiff. First, an infectious disease specialist examined plaintiff and concluded that there was no evidence any of her symptoms were caused by Lyme disease. Second, a neurologist/psychiatrist examined plaintiff and concluded that her principal diagnoses were depression and hypochondriasis.

In September 1998, Standard advised plaintiff that she was entitled to disability benefits based on its determination that she was "unable to perform the material duties of her own occupation because of Chronic Major Depressive Disorder and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Hypochondriasis." *Id.*, Vol. III at SI–00502. Standard also informed plaintiff that its policy limited payment of benefits to twenty-four months for mental disorders, and that, while it had not yet made a final determination, it appeared that the twenty-four month limitation would apply to her claim. Standard further informed plaintiff that the evidence in the claim file did not support her claim that she was disabled due to a physical disease.

In November 1998 and February and April 1999, plaintiff submitted additional statements and medical records from her treating physicians to Standard. This additional medical information supported her claim that she was disabled as a result of Lyme disease and related secondary physical diseases. During this same time period, Standard retained a Lyme disease specialist to review plaintiff's medical records. In April 1999, the specialist issued a report in which he concluded that "there is reason to believe that Dr. Schwob is debilitated and limited, with a diminished functional capacity, but there is no proof that this is the result of Lyme disease, active currently or in the past." *Id.*, Vol. V at SI–01355. In May 1999, Standard then informed plaintiff that there was insufficient proof she was disabled by a physical disease, and that it was upholding its prior decision regarding the mental disorder limitation. Standard also informed plaintiff that her claim file was being forwarded to its Quality Assurance Department for a final review.

Instead of waiting for a decision from Standard's Quality Assurance Department, plaintiff filed the instant action against Standard in June 1999. Subsequently, on September 24, 1999, Standard's Quality Assurance Department sent a letter to plaintiff informing her that it was upholding the determination that there was insufficient proof she was disabled by a physical disease. Standard also informed plaintiff that she would no longer qualify for benefits based on her mental disorders after January 8, 2000.

Despite the decision of Standard's Quality Assurance Department, plaintiff continued to submit additional statements and medical records from her treating physicians to Standard after September 24, 1999. Further, it is undisputed that Standard not only agreed to review the additional medical information, but that it agreed to reopen the administrative record and reconsider its prior denial of disability benefits based on a physical disease. Standard's agreement to reopen the administrative record was initially confirmed in a pleading entitled "Joint Application for Extension of Scheduled Deadlines and Continuance of the Trial Date" which plaintiff and Standard submitted to the district court on December 1, 1999. *Id.*, Vol. I at VS–00091–93. In the joint application, Standard and plaintiff informed the district court of the following:

1. On October 27, 1999, Standard filed a motion to dismiss based on lack of subject matter jurisdiction. As of the date of filing this application, no ruling has been made on Standard's motion to dismiss. As set forth in the motion to dismiss, *this case is not ripe for review until the administrative record on Plaintiff's disability claim has been finalized because until that point in time the administrative record could change.*

2. *Because the case is not ripe and the administrative record is not finalized,* Standard cannot adequately prepare to meet the scheduled deadlines in this case. *In addition, Plaintiff has indicated her intent to submit additional materials for review by Standard, which will again alter the administrative record.* The parties agree that if the Court grants the requested exten-

sion of scheduled deadlines and trial setting, Standard's motion to dismiss will be mooted.

*Id.* at VS–00091 (emphasis added).[1]

Standard's agreement to reopen the administrative record was again confirmed in a subsequent joint application for extensions of time which plaintiff and Standard submitted to the district court on February 29, 2000. *Id.* at VS–00095–97. In the second joint application, Standard and plaintiff informed the district court of the following:

 1. On December 7, 1999, December 30, 1999, and February 1, 2000, Plaintiff submitted additional materials and test results to Standard and requested that Standard review those materials with regard to her claim for disability benefits. Plaintiff also intends to submit further additional materials and test results to Standard on or before March 3, 2000. *Because Standard has not had the opportunity to review these additional materials and inform Plaintiff of any effect these materials may have on the benefits determination, the administrative record on Plaintiff's disability claim has not been finalized. Therefore, until Standard has been able to complete its review of the additional materials, the administrative record for this case could change substantially.*

 2. *Because the administrative record is not finalized,* Standard cannot adequately prepare to meet the scheduled deadlines in this case. In addition, when Plaintiff submits additional materials for review by Standard on or before March 3, 2000, *the administrative rec-*

*ord will once again be altered.* However, Plaintiff will not submit any additional materials after March 3, 2000.

*Id.* at VS–00095–96 (emphasis added).[2]

Standard's agreement to reopen the administrative record was also confirmed in a letter its counsel sent to plaintiff's counsel on February 28, 2000. In the letter, Standard's counsel confirmed that Standard had "agree[d] that all materials you have previously submitted on behalf of Dr. Schwob and all materials submitted on or before March 3, 2000, will be part of the materials reviewed to make a benefits determination under the long-term disability plan at issue in the above case." *Id.* at VS–00094. Subsequently, in April 2000, Standard also scheduled plaintiff for another independent medical examination and a neuropsychological evaluation, and Standard's agreement to reopen the administrative record was also confirmed in connection with the scheduling of those appointments. Specifically, Standard's counsel informed plaintiff's counsel that she "ha[d] been authorized by [her] client to agree that Dr. Schwob may submit any new test results or reports (i.e.—from any testing done after March 3, 2000) to [the doctors who were scheduled to perform the examination and evaluation], provided that a copy of those documents [was] also forwarded to [her]." *Id.* at VS–00101.

Despite Standard's agreement to reopen the administrative record and consider plaintiff's additional medical evidence, Standard never made a benefits determination based on the additional evidence. Instead, on July 3, 2000, Standard filed a

---

1. On December 6, 1999, the district court entered an order granting the parties' joint application for extensions of time. In addition, on December 8, 1999, as requested by the parties, the court entered an order denying Standard's motion to dismiss on ripeness grounds as moot.

2. On March 2, 2000, the district court entered an order granting the parties' second joint application for extensions of time.

motion for summary judgment in the district court. In its motion, Standard argued that its Quality Assurance Department had made a final decision denying plaintiff's claim for disability benefits based on a physical disease on September 24, 1999, and Standard argued that the district court could only examine the administrative record that was before Standard at that time in determining whether the denial of benefits was proper. In response to Standard's motion, plaintiff argued that all of the medical information she had submitted to Standard was part of the administrative record for the district court to consider in ruling on the motion. Thus, plaintiff submitted the post-September 1999 statements and medical records from her treating physicians as exhibits for the court to consider in ruling on Standard's motion.

Standard then filed a motion to strike plaintiff's summary judgment exhibits on the grounds that they were not part of the administrative record that was before it on September 24, 1999. In its motion, Standard acknowledged that it had agreed to review the additional medical information which plaintiff submitted to it after September 24, 1999. However, Standard stated that it had been forced to abandon that agreement because plaintiff had refused to join in its proposed third application to the district court for additional extensions of time. According to Standard, plaintiff had therefore refused to provide it with sufficient time to review the additional medical information. As a result, Standard claimed that it had no alternative but to move for summary judgment based on its September 24, 1999 benefits determination.

In September 2000, the district court granted Standard's motion to strike plaintiff's summary judgment exhibits, and it entered summary judgment in favor of Standard based on the administrative record that existed on September 24, 1999. In making its determination regarding the scope of the administrative record, the court noted that plaintiff did not dispute Standard's assertion that it had not had sufficient time to make a benefits determination based on the medical information it received after September 24, 1999. Consequently, the court held that "the only final determination as to the applicability of the twenty-four month mental disorder limitation was the determination made on September 24, 1999." *Id.* at VS–00113. Plaintiff subsequently filed a motion for reconsideration, arguing that the district court erred by entering summary judgment based on an incomplete administrative record, but the court denied the motion, and this appeal followed.

## II.

We need not address the issues raised on appeal by plaintiff because we hold that the district court erred by failing to dismiss plaintiff's complaint sua sponte for lack of subject matter jurisdiction based on the doctrine of ripeness.

We begin our analysis by noting that the district court correctly determined that the September 24, 1999 denial of benefits by Standard's Quality Assurance Department is the only final administrative decision in this case. The district court was also correct in determining that any medical information generated after that date is irrelevant for purposes of determining whether Standard acted in an arbitrary and capricious manner in initially denying plaintiff's claim for disability benefits. *See Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 823–24 (10th Cir.1996). However, we hold that the district court should not have reached these issues because it overlooked the fact that it no longer had a ripe case and controversy before it after

Standard agreed to reopen the administrative record and reconsider its denial of benefits.

"The ripeness doctrine ... is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. Accordingly, ripeness can be raised at any time, even by [this] court sua sponte for the first time on appeal." *Utah v. United States Dep't of the Interior,* 210 F.3d 1193, 1196 n. 1 (10th Cir.2000) (quotation and citations omitted).

"Uniformly, courts recognize that an ERISA cause of action accrues when an application for benefits is denied." *Held v. Mfrs. Hanover Leasing Corp.,* 912 F.2d 1197, 1205 (10th Cir.1990) (quotation omitted). "Therefore, exhaustion of administrative (i.e., company—or plan–provided) remedies is an implicit prerequisite to seeking judicial relief. If the rule were otherwise, lawsuits likely would be—and should be—dismissed for lack of ripeness." *Id.* at 1206. This is consistent with the general principle that "[t]he doctrine of ripeness prevents federal courts from interfering with the actions of administrative agencies except when a specific final agency action has an actual or immediately threatened effect." *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 241 (10th Cir.1991) (quotation omitted).

In determining whether an administrative action is fit for judicial resolution, we must therefore consider "the legal nature of the question presented and the finality of the administrative action." *Rocky Mountain Radar, Inc. v. FCC,* 158 F.3d 1118, 1123 (10th Cir.1998) (quotation omitted). Further, we must engage in a three-part inquiry to determine: "(1) whether delayed review would cause hardship to [plaintiff]; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from fur-

ther factual development of the issues presented." *Roe # 2 v. Ogden,* 253 F.3d 1225, 1231 (10th Cir.2001) (quotation omitted). As set forth above, this case involves a unique situation in that:

(1) plaintiff filed suit before exhausting her administrative remedies; (2) after plaintiff filed suit, her administrative remedies were effectively exhausted on September 24, 1999 when Standard's Quality Assurance Department made what appeared to be a final decision denying plaintiff's claim for physical disease benefits; but (3) Standard subsequently agreed to reopen the administrative record and reconsider its decision denying benefits. Accordingly, while there may have been a ripe case and controversy for purposes of Article III as of September 24, 1999, this ceased to be the case at least as early as December 1, 1999, when Standard informed the district court that it was in the process of reviewing additional medical information submitted by plaintiff, and that the case was therefore not ripe because the administrative record was not yet finalized. Aplt.App., Vol. I at VS–00091. Moreover, at that point, postponing judicial review would not have caused hardship to plaintiff; any judicial intervention would have inappropriately interfered with the continuing administrative process; and both the district court and this court would have benefited from further factual development of the relevant medical issues. *See Roe # 2,* 253 F.3d at 1231.

Although we are somewhat sympathetic to Standard's claim that it did not have sufficient time to review all of the additional medical information it received from plaintiff given the pending deadlines in the district court and plaintiff's refusal to join in a third application for extensions of time, Standard's position on the ripeness issue was nonetheless fraught with contradictions. In particular, if the case was not

ripe as Standard itself informed the district court, first in its motion to dismiss and then in the parties' joint applications for extensions of time, then the district court was not in a position to grant Standard additional time to consider plaintiff's new medical evidence.[3] Instead, the district court's only option was to dismiss the case without prejudice for lack of subject matter jurisdiction, and its failure to do so was reversible error.

The judgment of the district court is VACATED, and this case is REMANDED to the district court with instructions for the court to dismiss the case without prejudice.

---

**3.** In a letter its counsel sent to plaintiff's counsel on July 14, 2000, Standard justified its decision to abandon its agreement to review plaintiff's additional medical information on the grounds that, "[w]hile [it] had agreed to reopen the review process if Plaintiff would allow sufficient time for review of additional materials, Plaintiff has now refused to postpone the deadlines in the current case so that a proper review could be conducted." Aplt.App., Vol. I at VS–00080. However, under the governing Article III principles, Standard could not have it both ways, and, once it expressly agreed to reopen the administrative record, the case was no longer ripe, regardless of any subsequent timing issues.