# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 19, 2010

No. 08-60949

Lyle W. Cayce
Clerk

BAPTIST MEMORIAL HOSPITAL - DESOTO INC,

Plaintiff - Appellee- Cross-Appellant

v.

CRAIN AUTOMOTIVE INC,

Defendant - Appellant- Cross-Appellee

- - - - - - - - - - - - - - - - - - -

consolidated with:

No. 08-61119

BAPTIST MEMORIAL HOSPITAL - DESOTO INC,

Plaintiff - Appellee

v.

CRAIN AUTOMOTIVE INC,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 2:05-CV-166

No. 08-60949

Before STEWART, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant Crain Automotive, Inc. ("Crain Automotive") appeals from the district court's judgment, following a bench trial, that it wrongfully denied benefits due under an employer-funded employee health plan, in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a). The district court awarded damages to plaintiff Baptist Memorial Hospital-DeSoto, Inc. ("BMHD"), as assignee of the participant's rights under plan, in the amount of $39,751.08 (plus prejudgment interest) and attorney's fees and costs in the amount of $110,961.48. We affirm.

## I. BACKGROUND

Crain Automotive established and maintained a self-funded, ERISA-covered employee health plan (the "Crain Plan"). Crain Automotive operates a series of automobile dealerships and related businesses in central Arkansas, and employs approximately 400 people. The Crain Plan provides health benefits to Crain Automotive's employees, their spouses, and their dependents. Larry Crain serves as Crain Automotive's Chairman and, due to that position, had ultimate authority for administering the Crain Plan.

Crain Automotive contracted with NovaSys Health Network ("NovaSys") to serve as the plan's preferred provider organization. NovaSys in turn contracted with Baptist Health Services Group and its participant, Baptist Memorial Hospital—Desoto, Inc. ("BMHD") to serve as a preferred provider. Under this arrangement, Baptist Memorial Hospitals in Shelby County, Tennessee and DeSoto County, Mississippi (including BMHD) agreed to discount charges for all inpatient and outpatient services by 15%. These contractual

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

relationships made BMHD a preferred provider under the terms of the Crain Plan. Crain Automotive contracted with yet another entity, CoreSource, to serve as the Crain Plan's claims processor.

Dennis Brown was a spouse of a Crain Automotive employee and a participant in the Crain Plan. He received medically necessary inpatient treatment, involving the surgical implantation of two cardiac stents, at BMHD from November 6 to November 8, 2003. This treatment resulted in charges of $41,316.95. Before discharge, Brown signed an agreement assigning his rights under the Crain Plan to BMHD, thereby allowing BMHD to make claims for benefits under the Crain Plan and to bring the instant suit.

BMHD submitted a claim to CoreSource on December 3, 2003, in the amount of $41,316.95, minus the 15% preferred-provider discount. CoreSource forwarded the explanation of benefits to the Crain Automotive in late January 2004. Thereafter, on January 28, 2004, CoreSource informed BMHD that it would receive checks for the entire amount of the claim. When BMHD failed to receive the checks, however, it followed up with CoreSource as to the status of the claim. On February 11, 2004, CoreSource notified BMHD that it was still waiting for Crain Automotive to release the payment. CoreSource asked BMHD for an additional thirty days to make payment, to which BMHD agreed. After that thirty-day period expired, CoreSource again informed BMHD that it was still awaiting Crain Automotive's authorization to release the payment.

As the district court found, Larry Crain called BMHD's billing office on April 12, 2004, and informed it that he believed the charges were excessive (or, as he called them, "price gouging") and stated that "he wanted to make an offer to settle this." BMHD refused to negotiate the charges, explaining that it had already applied the preferred-provider discount and that there would be no further discounts. BMHD followed up on the status of the claim with CoreSource and Larry Crain on May 24, 2004. The next day, Larry Crain called

No. 08-60949

BMHD's billing office and stated that "he [was] not going to pay" until BMHD "answer[ed] all his questions." BMHD informed him that it "provided the services and have billed them" and that it was "not going to give any more discount[s]." Larry Crain conveyed to BMHD that he felt BMHD was "taking advantage," and he advised BMHD to contact its attorney. On June 21, 2004, BMHD noted in its files that "the key person does not want to pay this bill" and began billing the patient directly.

BMHD followed up on the status of the claim with CoreSource on July 21st and again on July 27th. On July 28, 2004, CoreSource informed BMHD that it had returned the payment checks to Crain Automotive, which prompted BMHD to contact Crain Automotive directly by telephone (there was no answer, and BMHD left a message). Larry Crain contacted BMHD on August 10, 2004, and stated that he was holding the payment checks until BMHD reviewed the claim because he still believed the charges were too high. He stated that he was willing to pay the claim, but that he wanted to negotiate a payment settlement. According to BMHD's records, Larry Crain "stated that one of [BMHD's] reps was very rude and disconnected the call while he was trying to negotiate a discount settlement." BMHD followed-up on the status of the claim on September 22, 2004, and again attempted to contact CoreSource on October 13, 2004.

There were no further communications between the parties until, on August 25, 2005, BMHD filed the instant suit against Crain Automotive (as well as NovaSys and CoreSource, which have since been dismissed) for recovery of plan benefits under 29 U.S.C. § 1132(A)(1)(B). BMHD also sought fees and costs under 29 U.S.C. § 1132(g)(1). Following a bench trial, the district court found: (1) BMHD was not required to exhaust its administrative remedies because the defendant failed to properly deny the claim; (2) BMHD's suit was not barred by the plan's contractual statute of limitations because its requirement that any

4

suit must be brought within one year of filing a claim was unreasonable; (3) the administrator's interpretation of the plan was legally incorrect and the denial of the claim was an abuse of discretion; and (4) BMHD was entitled to prejudgment interest. Thus, the district court found for BMHD in the amount of $39,751.08 plus prejudgment interest.

BMHD subsequently moved for attorneys' fees and costs. After reviewing the relevant factors, the district court found that BMHD was entitled to fees and costs. The district court awarded BMHD half of its requested fees and all of its requested costs, for a total award of fees and costs of $110,961.48.

Crain Automotive timely appealed.

## II. STANDARD OF REVIEW

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Lehmann v. GE Global Ins. Holding Corp.*, 524 F.3d 621, 624 (5th Cir. 2008) (citing *In re Mid-South Towing Co.*, 418 F.3d 526, 631 (5th Cir. 2005)). "A finding of fact is said to be 'clearly erroneous' when, notwithstanding there is evidence to support it, the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Justiss Oil Co. v. Kerr-McGee Refining Corp.,* 75 F.3d 1057, 1062 (5th Cir. 1996) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III. DISCUSSION

Crain Automotive argues the district court erred in four respects: (1) in concluding that BMHD's claim was not barred for failure to exhaust its administrative remedies; (2) in concluding that BMHD's claims were not barred by the plan's one-year contractual limitations period; (3) in concluding that the administrator's interpretation of the plan was not legally correct and that it

abused its discretion by denying BMHD's claim; and (4) in awarding BMHD attorneys' fees and costs. We discuss these points of error in turn.

## A.   Failure to Exhaust Administrative Remedies

The district court found that because Crain Automotive never issued a formal denial letter to BMHD, the claim was "technically and practically . . . never denied." Thus, the district court found, BMHD had no obligation to exhaust any of the Crain Plan's internal administrative remedies. Crain Automotive argues that it substantially complied with the notice-of-denial requirement because Larry Crain repeatedly and adequately notified BMHD that the plan would not pay the charges because they were excessive and unreasonable. BMHD argues that Crain Automotive, acting through Larry Crain, failed to convey that it had denied the claim and, in any event, his purported oral denial did not substantially comply with the applicable statutory, regulatory, and contractual notice requirements.

"ERISA provides certain minimal procedural requirements upon an administrator's denial of a benefits claim." *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007). The plan administrator must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The Department of Labor has promulgated regulations under § 1333 pertaining to the denial of a claim, which provide in part:

> [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set forth, in a manner calculated to be understood by the claimant—
>
> (i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedure, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1(g)(1).

It is undisputed that BMHD did not actually exhaust the administrative remedies available under the Crain Plan. Generally, "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corp.*, 215 F.3d 475, 479 (5th Cir. 2000). However, when the administrator fails to "follow claims procedures consistent with the [regulatory] requirements," including providing adequate notice that it has denied the claim, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." *See* 29 C.F.R. § 2560.503-1(*l*).

ERISA does not require strict compliance with its procedural requirements, mandating only that plan administrators "substantially comply" with the statute and accompanying regulations. *See Lacy v. Fulbright & Jaworski*, 405 F.3d 254, 256-57 (5th Cir. 2005). "Technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled," *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006), which is "'to afford the beneficiary an explanation of the denial of benefits that

7

No. 08-60949

is adequate to ensure meaningful review of that denial,'" *Wade,* 493 F.3d at 539. In assessing whether the administrator has "substantially complied" with the applicable procedural requirements, the court must "'consider[] all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances.'" *Id.* (quoting *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006). "'All communications' may include oral communications." *Id.* (citing *White v. Aetna Life Ins. Co.*, 210 F.3d 412, 417 (D.C. Cir. 2000). Whether the plan administrator substantially complied with the notice requirements is a question of law. *See Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 235 (4th Cir. 1997).

The content of the administrator's oral communications in this case did not "substantially comply" with the applicable procedural requirements for denying a claim. First, as the district court found and Crain Automotive acknowledges on appeal, the administrator failed to provide any written notice to BMHD that the claim was denied. Indeed, it does not appear in the record that there were any written communications directed from Larry Crain or any other responsible person to BMHD. Second, the district court's findings show that there were no communications within the thirty days that BMHD filed its claim in which the administrator communicated that it had been denied. CoreSource, the administrator's claims processing agent, even communicated in January 2004 the claim was going to be paid; it was only after months of delay that Larry Crain informed BMHD in April 2004 that he believed the charges were excessive and unreasonable. Third, although there is evidence that Larry Crain informed BMHD that Crain Automotive was not going to pay the claim because he believed the charges were too high, he did not provide any specific reasons supporting his determination. *See Weaver v. Phoenix Home Life Mut. Ins. Co.* 990 F.2d 154, 158 (4th Cir. 1993). Fourth, there is no evidence that Larry Crain, CoreSource, or anyone else referenced the specific plan provisions under which

Crain Automotive refused to pay the claim. Finally, there is no indication that Crain Automotive or its representatives ever advised BMHD of its administrative or judicial remedies, as the statute, regulations, and plan required.

Because Crain Automotive failed to substantially comply with its duty to notify BMHD that it had denied the claim, the district court properly excused BMHD's failure to exhaust its administrative remedies.

## B.    The Limitations Period

Crain Automotive argues the district court erred in concluding that BMHD properly filed suit within the Crain Plan's limitations period. The Crain Plan provides:

> No action at law or in equity . . . . shall be brought after the expiration of two (2) years from the date the expense was incurred, or one (1) year from the date a completed claim was filed, whichever occurs first.

Crain Automotive argued below, and maintains on appeal, that BMHD filed a completed claim on December 3, 2003. Crediting the testimony of BMHD's controller, the district court found that BMHD submitted a completed claim on November 13, 2003. Using either claim date, BMHD filed the instant suit—filed on August 25, 2005—well outside the plan's one-year limitations period. However, the district court concluded that the one-year limitations period was "unreasonable" and thus unenforceable.

"Under ERISA, a cause of action accrues after a claim for benefits has been made and formally denied. Because ERISA provides no specific limitations period, we apply state law principles of limitation. Where a plan designates a *reasonable*, shorter time period, however, that lesser limitations schedule governs." *Harris Methodist Fort Worth v. Sales Support Servs Inc. Employee Health Care Plan*, 426 F.3d 330, 337 (5th Cir. 2005) (citations omitted)

No. 08-60949

(emphasis added).  The reasonableness of the plan's limitations period is a question of law.  *See id.* at 333.

We conclude the Crain Plan's one-year limitations period is unreasonable under the circumstances presented here.  First, the one-year limitations period begins to run when a participant merely files a completed claim, potentially long before the claimant's ERISA cause of action even accrues.[1]  The administrator's initial denial of a claim could take as long as 90 days under the Crain Plan, depending on whether the administrator requests that the claimant submit additional information. The claimant then has an additional 180 days to administratively appeal the denial of a claim, and the administrator then has 60 days to issue a decision on the appeal.  In total, the Crain Plan's claim and internal appeal procedures could take as long as 330 days, leaving an unsatisfied claimant with only 35 days to file suit.

This, of course, presupposes that the administrator properly follows the plan's procedures, which Crain Automotive failed to do in this case.  Instead, Crain Automotive and its representatives, Larry Crain and CoreSource,

---

[1] The Fourth Circuit has held that a limitations period that begins to run before the ERISA cause of action accrues is unreasonable *per se*.  *White v. Sun Life Assur. Co.*, 488 F.3d 240, 247 (4th Cir. 2007) (holding that a plan limitations period that "start[s] the clock ticking on civil claims while the plan is still considering internal appeals" is categorically unreasonable).  Other circuits have disagreed with the Fourth Circuit's approach, opting instead to consider reasonableness on a case-by-case basis—even when the limitations period begins to run before a cause of action accrues. *See Salisbury v. Hartford Life & Accident Co.*, 583 F.3d 1245, 1249 (10th Cir. 2009); *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plans*, 572 F.3d 76, 81 (2d Cir. 2009); *Abena v. Metro. Life Ins. Co.*, 544 F.3d 880 (7th Cir.2008); *Clark v. NBD Bank, N.A.*, 3 F. App'x 500 (6th Cir. 2001); *Blaske v. UNUM Life Ins. Co. of Am.*, 131 F.3d 763 (8th Cir. 1997). The Second Circuit in *Burke* concluded that we also declined to follow the Fourth Circuit's rule with our decision in *Harris Methodist*. Although *Harris Methodist* involved a three-year limitations period that began to run with the filing a completed claim, and thus before the claimant's ERISA cause of action accrued, we had no occasion to address this question because the parties did not dispute the reasonableness of the limitations period. *See Harris Methodist*, 426 F.3d at 337-38.  This case similarly presents no occasion to decide the question because the limitations period is unreasonable in the circumstances of this case, even assuming *arguendo* that we would decline to follow the Fourth Circuit's holding in *White*.

repeatedly assured BMHD that the claim was under review, that payment was still possible, or even that payment was imminent. As late as August 2004, Larry Crain communicated to BMHD that he was still willing to pay the claim for some amount (in other words, that the administrator was still considering the claim). BMHD attempted to follow up on the status of the claim on September 22, 2004 and again on October 13, 2004, to no avail. The one-year limitations period expired only thirty days after BMHD left its last (unreturned) message with CoreSource. BMHD had no reason to believe that the administrator had denied the claim, reasonably expecting that it would provide a clear decision to that effect, supported with more than Larry Crain's conclusory assertion that the charge was too high. Indeed, in the absence of a formal denial, BMHD's ERISA cause of action had not yet accrued as of October 13, 2004. *Harris Methodist*, 426 F.3d at 337 ("Under ERISA, a cause of action accrues after a claim for benefits has been made and formally denied."); *see also Hall v. Nat'l Gypsum Co.*, 105 F.3d 225 (5th Cir. 1997) ("A cause of action under ERISA accrues when a request for benefits is denied.").

We know of no decisions, and Crain Automotive has pointed to none, approving such a short limitations period, particularly where the administrator utterly failed to adhere to its procedural obligations. Accordingly, we conclude that Crain Automotive's failure to follow its obligation to properly deny the claim, coupled with its communications leading BMHD to believe that its claim was actively under consideration, caused the one-year limitations period to be unreasonably short in this case. *See Doe v. Blue Cross & Blue Shield of Wis.*, 112 F.3d 869, 876 (7th Cir. 1997) ("[W]e have trouble seeing why a defendant whose own activities made the plaintiff miss the deadline should be allowed to litigate over whether the plaintiff could have sued earlier."). BMHD timely filed the instant suit within the Crain Plan's longer limitations period of two years from the date the expense was incurred.

## C.    Abuse of Discretion

As is applicable here, the Crain Plan provides:

The Plan will not provide benefits for any of the items listed in this section, regardless of medical necessity or recommendation of a physician or professional provider. . . . Charges made for services, supplies and treatment . . . to the extent that the charges exceed customary and reasonable amount [sic] or exceed the negotiated rate as applicable.

The district court first held that Crain Automotive, through Larry Crain, applied a legally incorrect interpretation of the Plan, specifically the plan's treatment of "customary and reasonable" charges.  Larry Crain testified that he interpreted the plan to exclude any charges, even those assessed at a negotiated rate, if those charges exceeded the "customary and reasonable amount."  The district court concluded this interpretation was legally incorrect, reasoning that "[t]he operative 'or' here seems to indicate that the charges may not exceed either the customary and reasonable amount or the negotiated rate but fails to mandate compliance with both options."  Thus, the district court found that the plan terms required payment of a claim that was either: (1) customary and reasonable, or (2) at the negotiated rate.  The district court further concluded that Larry Crain abused his discretion in denying the claim because BMHD was a preferred provider who submitted a claim at the negotiated rate and, in any event, there was no evidence supporting Larry Crain's conclusion that the submitted charges were unreasonable.

A plan administrator's factual determinations are reviewed for abuse of discretion. *Pierre v. Conn. Gen.Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1562 (5th Cir. 1991). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence.  A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts

and the evidence.'" *Meditrust Fin. Servs Corp. v Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004). "When assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc).

A plan administrator may abuse its discretion if it denied a claim for benefits on the basis of an unsupported factual determination, even if it otherwise acted pursuant to a legally correct interpretation of the plan. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 231 (5th Cir. 2004) ("Though we have determined that a legally correct standard was applied, we still must consider whether the facts before [the administrator] and underlying its decision to deny benefits support that decision or whether its factual determinations were an abuse of discretion."); *see also Wade,* 493 F.3d at 541 (reviewing the administrator's factual determinations for abuse of discretion where the parties agreed that interpretation of the plan was legally correct); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996) (same); *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994) (same).

We need not consider whether Crain Automotive applied a legally correct interpretation of the plan because, even under its interpretation, Crain Automotive abused its discretion in determining that the charges were not "customary and "reasonable." The plan defines "Customary and Reasonable Amount" as

> [t]he fee assessed by a provider of service for services, supplies or treatment which shall not exceed the general level of charges made

by others rendering or furnishing such services or treatment within the area where the charge is *incurred* and is comparable in severity and nature to the illness or injury. Due consideration shall be given to any medical complications or unusual circumstances which require additional time, skill or experience. The customary and reasonable amount is determined from a statistical review and analysis of the charges for a given procedure in a given area. The term 'area' as it would apply to any particular service, supply or treatment means a county or such greater area as is necessary to obtain a representative cross-section of the level of charges.

At trial, Larry Crain testified as to the basis for his conclusion that BMHD's charges were unreasonable. Larry Crain explained that he primarily relied on his own experience in processing claims to determine whether the charges in this case were reasonable. He testified that he "determined what -- what medical issue was involved and tried to apply a reasonableness of my own based on all of the different claims that I'd seen in the past," and that he used his "business background and experience to make reasonable judgments about charges. Larry Crain was unable to provide specific estimates at trial as to how many claims he has handled, noting only a previous claim for $500,000 for another beneficiary's 21-day hospital stay in Arkansas that he was able to reduced to $250,000 through negotiations with the service provider. Neither Larry Crain's testimony nor any evidence before the administrator indicates whether that claim involved services similar to those provided in this case.

On cross-examination, Larry Crain admitted that he never discussed either the claim or the services provided with the plan beneficiary, nor did he attempt to gather any information from NovaSys, the preferred provider organization. Larry Crain acknowledged that he never received any specific information from BMHD, though he did not dispute that it provided sufficient information to make a valid claim for benefits. Larry Crain further acknowledged that he has not worked as a hospital administrator, nor has he ever been involved in establishing charges for a hospital or any other kind of

health care provider.  Finally, Larry Crain testified that he had not even seen the beneficiary's hospital records at the time he was considering the reasonableness of BMHD's claim.

In sum, Crain Automotive and its responsible party, Larry Crain, had no evidence upon which to base its decision to deny BMHD's claim.  Rather, Larry Crain relied only on his own speculation and uninformed assessment of the reasonableness of the charges to conclude they were not customary and were unreasonable.  The Crain Plan called for a statistical review and analysis of charges in the area for similar services; no such review was undertaken in this case.  There is no indication that Larry Crain considered the charges for similar services in the geographical area where BMHD provided treatment.  Indeed, it is not apparent from the record that Larry Crain even understood what services BMHD actually provided.  Larry Crain's vague references to a 21-day hospital stay by another plan beneficiary in another state for an unknown illness, and his vague "experience" in handling claims was not evidence sufficient to support the denial of benefits here.  As we have previously stated:

> Plainly put, we will not countenance a denial of a claim solely because an administrator suspects something may be awry. Although we owe deference to an administrator's reasoned decision, we owe no deference to the administrator's unsupported suspicions. Without some evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion.

No. 08-60949

*Vega*, 188 F.3d at 302.[2]  Crain Automotive abused its discretion by arbitrarily concluding that the charges were not customary and were unreasonably high.[3]

## D.    Attorneys' Fees Award

On BMHD's post-trial motion, the district court assessed fees in the amount of $101,982.50 and costs in the amount of $8,978.98.  Crain Automotive does not challenge either the amount of the fees award or the award of costs, and contests only BMHD's entitlement to any attorneys' fees.

In an ERISA civil enforcement action, "[t]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  This court therefore reviews the district court's award of fees and costs for abuse of discretion.  *Iron Workers No. 727 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1982). We have explained:

> In deciding whether to award attorneys' fees to a party under section 502(g) . . . a court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of

---

[2] Crain Automotive futilely argues that Larry Crain's decision was supported in part by his post-denial consultation with expert witness Robert Frost.  Frost opined in the consultation and at trial that the charges submitted by BMHD were excessive.  However, Crain admitted at trial that he did not speak with Frost until July 2006 -- long after the claim had been denied, and after BMHD filed the instant suit.  Accordingly, Frost's opinions are not part of the administrative record and cannot be substantial evidence supporting Larry Crain's denial of the claim.  *See Wildbur*, 974 F.2d at 639 ("We have long held that in conducting review under an abuse of discretion standard, a district court should evaluate the administrator's fact findings regarding the eligibility of a claimant based on the evidence before the administrator, assuming that both parties were given an opportunity to present facts to the administrator"), citing *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1304 (5th Cir. 1985) ("In reviewing a decision under the arbitrary and capricious standard, the trial court must focus on the evidence that was before the Plan committee when the final benefit determination was made.").

[3] The district court's finding is further supported by the conflict of interest under which defendant handled BMHD's claim.  The Crain Plan was a self-insured employer-sponsored health benefits plan.  Thus, defendant had both a financial interest in the claims paid from the plan and was the plan administrator.  "Where, as here, the employer who funds the plan also determines eligibility for benefits, a structural conflict of interest exists."  *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 248, 428 (5th Cir. 2009).

attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.*

The district court found that "[Larry] Crain's degree of culpability warrants an imposition of attorneys' fees." Specifically, the district court summarized the lack of any evidence supporting the plan administrator's decision and the conflict of interest Larry Crain "very candidly admitted." Next, the district court noted that defendant had not argued in response to the motion for fees that it was unable to satisfy the large award BMHD requested (its request was for fees and costs in the amount of $237,576.73). Nonetheless, the district court noted that defendant has four hundred employees (and the testimony at trial showed that Crain Automotive operates 11 or 12 car dealerships), as well as Larry Crain's testimony that he felt the earlier claim he negotiated to $250,000 was "reasonable." Third, the district court found that an award of fees will deter defendant from future ERISA violations. Fourth, the district court found that the legal issues, particularly the plan administrator's disregard of its fiduciary obligations, weigh in favor of awarding fees, even though this suit was not brought on behalf of many plan participants. Finally, the district court found that BMHD's litigation position was much more meritorious than Crain Automotive's.

The district court carefully considered the five *Bowen* factors and made specific findings as to each one. Those findings are supported by the record before the district court. Moreover, the record shows that defendant denied the claim without *any* supporting evidence -- in clear violation of its obligations under ERISA. Larry Crain's testimony at trial also revealed that he was generally unaware of his statutory and contractual obligations, despite serving

17

No. 08-60949

as the sole representative of an ERISA fiduciary. "If an administrator has made a decision denying benefits when the record does not support such a denial, the court may, upon finding an abuse of discretion on the part of the administrator, award the amount due on the claim *and* attorneys' fees." *Vega*, 188 F.3d at 302. The district court did not abuse its discretion in awarding attorneys' fees.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment in all respects.

No. 08-60949

HAYNES, Circuit Judge, dissenting:

Because I conclude the one-year contractual period of limitations was not unreasonable as applied to this case, I respectfully dissent. Baptist Memorial Hospital–De Soto ("BMHD") had, at minimum, nearly six months, and arguably as much as ten months, to file suit after its claim was constructively denied by Crain Automotive Inc.'s ("Crain") failure to provide a timely notice of denial. To the extent Crain's owner, Larry Crain ("Mr. Crain"), misled BMHD with his continued entreaties, his conduct at most merely tolled the statute of limitations until his final communication in August 2004 rather than, as the majority opinion suggests, invalidating the limitation in its entirety. Accordingly, I would reverse the district court and render judgment in favor of Crain.

I agree with the majority opinion on the question of exhaustion. That conclusion—that BMHD exhausted its administrative remedies by operation of the applicable federal regulation, 29 C.F.R. § 2560.503-1(*l*) (2009)—leads to the concomitant conclusion that the one-year contractual limitations period was reasonable. Where, as here, a plan administrator fails reasonably to adhere to a claims procedure, § 2560.503-1(*l*) operates to render such a claim fully exhausted—thereby clearing the way for civil relief. Thus, as the majority opinion finds, once Crain failed to substantially comply with the denial procedures mandated by the underlying plan documents, BMHD's claim accrued, and it was free to pursue that claim in federal court.

I disagree, therefore, with the majority opinion's attempt to divorce this exhaustion analysis from its assessment of the contractual limitations period. Instead, the majority opinion assesses the contractual limitations period under a "worst case scenario" approach to conclude that a fully exhausted claim *could* leave a party with only thirty-five days to file suit. But that did not happen in this case. Instead, BMHD's claim was fully accrued and exhausted upon the

19

No. 08-60949

operation of § 2560.503-1(*l*).  Thus, in ascertaining whether the period of limitations was "reasonable," I would consider only how the limitations period applied under the facts of this case and not under a worst-case hypothetical.[1] *See Dye v. Assocs. First Capital Corp. Long-Term Disability Plan 504*, 243 F. App'x 808, 810 (5th Cir. 2007) (unpublished) (holding that the actual application of procedural safeguards made a 120-day period reasonable "in this *specific* case" (emphasis added))[2]; *see also Davidson v. Wal-Mart Assocs. Health & Welfare Plan*, 305 F. Supp. 2d 1059, 1074 (S.D. Iowa 2004) (cited favorably by *Dye* after finding 45-day period reasonable as applied to the facts of that case); *Sheckley v. Lincoln Nat'l Corp. Employees' Ret. Plan*, 366 F. Supp. 2d 140, 147 (D. Me. 2005) (cited favorably by *Dye* after finding that, under the pled facts, "there [was] no causal connection between the Plan's failure to follow the claims procedures laid out in [the plan document] and Plaintiff's failure to file this action . . . [until] after the Plan's six-month limitation period had run").

In keeping with the exhaustion analysis, the first step in assessing the reasonableness of the contractual limitations period is pinpointing the exact date at which § 2560.503-1(*l*) cleared the way for BMHD to bring suit.[3]  At the latest,

---

[1]  Additionally, I do not necessarily accept that thirty-five days to file suit following a thorough and complete eleven month review process would leave a party with an unreasonably short period to bring an action.  Previous courts have found short periods of limitations reasonable in light of the preparation for suit afforded by the administrative processing period. *See, e.g.*, *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1304 (11th Cir. 1998) (finding that a ten month appeals process combined with a ninety day limitations period provided an adequate opportunity to investigate a claim and file suit).

[2]  Although an unpublished decision is not precedent, it is cited for its persuasive reasoning.  Moreover, *Dye* appears to constitute our court's only direct attempt thus far to assess the reasonableness of an ERISA contractual limitations period.

[3]  I cannot accept the majority opinion's reasoning that "BMHD's ERISA cause of action had not yet accrued as of October 13, 2004."  By that logic, BMHD's claim *never* accrued because it has not been formally denied even now.  Not only does the majority opinion's position conflict with the aforementioned exhaustion analysis, but, taken to its logical conclusion, the majority opinion's position suggests this matter is not yet ripe for adjudication.

No. 08-60949

BMHD was on notice that Mr. Crain was not going to adhere to the parameters of the Crain Plan on April 12, 2004. At that point, BMHD had been informed by CoreSource, the claims processor, that Mr. Crain was refusing to release payment. Moreover, on that date, Mr. Crain contacted BMHD to try to settle the outstanding debt outside of the Crain Plan's claims review process. Thus, BMHD appears to have had approximately 214 days to file suit from the time its cause of action accrued under § 2560.503-1(*l*).

BMHD complains, however, that Mr. Crain misled it into believing that the parties could reach an amicable resolution and that he might still pay the claim pursuant to the terms of the Crain Plan. Accepting this proposition as true for the sake of argument does not lead to the conclusion that the effect of such misconduct is the invalidation of the one-year contractual period. Rather, the doctrine of equitable estoppel, often called "ERISA estoppel" in this context, operates to toll the statute of limitations until Crain ceased to mislead BMHD. *See Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005) (expressly adopting ERISA estoppel); *Piecznski v. Dril-Quip, Inc.*, 354 F. App'x 207, 211 (5th Cir. 2009) (unpublished) (applying ERISA estoppel to determine whether a contractual period of limitations should be tolled due to misrepresentations by a plan administrator). Mr. Crain last contacted BMHD on August 10, 2004. In that communication, he did, as BMHD suggests, indicate a continued willingness to comply with the plan up to that point. Thus, I assume for the sake of

---

Thus, if that position was correct, the court would be required to dismiss this case for lack of jurisdiction. *Cf. Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357 (5th Cir. 1981) ("[C]laims filed before a pension actually has been denied might be challenged for lack of ripeness."); *Schwob v. Std. Ins. Co.*, 37 F. App'x 465, 469-70 (10th Cir. 2002) (unpublished) (dismissing as unripe after plan administrators reopened administrative review to reconsider denial of benefits).

21

No. 08-60949

argument that ERISA estoppel applies due to Mr. Crain's alleged misconduct,[4] and that the contractual limitations period was thus tolled until that date.[5]

Applying the 214 remaining days to the tolling date of August 10, 2004, BMHD had until approximately March 12, 2005, to timely file suit under the applicable contractual term. Under the facts of this case, such a period is far from unreasonable. BMHD received three different phone calls from Mr. Crain informing it that he did not intend to adhere to the terms of the Crain Plan. CoreSource had informed BMHD no less than four times that Mr. Crain was preventing the payment of benefits. The requested payment was not made. Taken together, these communications and actions (or inaction) put BMHD on notice that Mr. Crain was not going to "follow claims procedures consistent with the [regulatory] requirements . . . ." 29 C.F.R. § 2560.503-1(*l*). Moreover, BMHD did nothing to advance its claim for more than ten months between its last call to CoreSoure on October 13, 2004, and when it filed suit on August 25, 2005. The record does not reveal a reason why the date it actually filed suit is any different from any of the days in the last ten months before it filed suit. BMHD had ample time to bring suit under the contractual limitations period, and I would hold its claim barred under the facts of this case and applicable law.

---

[4] As noted in *Mello* and *Piecz'nski*, "[t]o establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." *Mello*, 431 F.3d at 444-45; *see also Piecz'nski*, 354 F. App'x at 211. While the first and second elements appear satisfied, the third element presents a harder question. I do not attempt to address that question as I conclude that BMHD's claim is barred even if ERISA estoppel applies.

[5] BMHD contends it left messages with CoreSoure on September 22, 2004, and October 13, 2004, and, thus, Mr. Crain's malfeasance continued through that time. Under the most generous reading of the facts for BMHD, Mr. Crain ceased to take affirmative actions to mislead BMHD on August 10, 2004. Consequently, these later, unilateral actions do not continue tolling the statutory period. To hold otherwise would allow a party to hold open a bargained-for contractual period indefinitely by engaging in unlimited futile attempts to secure relief under a plan document.

No. 08-60949