United States Court of Appeals
Fifth Circuit

F I L E D

July 20, 2007

Charles R. Fulbruge III
Clerk

REVISED July 26, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-21068

ALFRED WADE

Plaintiff-Appellant

v.

HEWLETT-PACKARD DEVELOPMENT COMPANY LP SHORT TERM
DISABILITY PLAN, formerly known as Compaq Computer International
Corporation Short Term Disability Plan

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas Houston Division

Before JOLLY, HIGGINBOTHAM, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Alfred Wade appeals a summary judgment in favor of the defendant-appellee, administrator of his employer's Short-Term Disability Plan, on his claim for benefits under the Plan. We affirm.

**I.**

Claimant-appellant Alfred Wade began his employment with Compaq Computer Corporation ("Compaq") in 1988 as a Line Operator; at the time he left his employment, he was employed as an internal consultant in sales and services at one of Compaq's retail stores.  On August 24, 2000, Wade consulted a psychiatrist, Dr. Mary Ann Ty, who diagnosed Wade with major depression and attention deficit-hyperactivity disorder.  Dr. Ty based her diagnosis on Wade's symptoms including: feelings of being "out of control" and "overwhelmed," hypersomnia, decrease in energy, difficulty with concentration and attention, disorganization, and inability to complete tasks.  However, she found that Wade's ability to make decisions regarding daily living, relationships, and life was rated as "good."  She advised him not to go to work.

Upon this diagnosis, Wade, on August 24, 2000, filed a claim for short-term disability benefits.  The Plan defined "disability" as:

> . . . a medical condition (or having such a condition, as the case may be) determined by the Plan Administrator to be one which is continuous and prevents the Employee from performing each of the material duties of his or her regular occupation. The Employee (1) must also be under the regular care of Physician appropriate to the medical condition and (2) cannot be working at any job for wage or profit in order to be Disabled or considered to have a

> Disability, except when such a job is for his Employer or within the terms of Rehabilitative Employment pursuant to Section 3.9.

Compaq, his employer, was the Plan Administrator and retained final authority over benefits decisions; however, it outsourced preliminary short-term disability benefits review to ValueOptions, a disability care management service company. Upon receiving Wade's claim, ValueOptions opened a disability case file for him on or around August 29, 2000.

The Plan's benefits review process consisted of three levels. ValueOptions conducted the first two levels, while Compaq conducted the third and final level. At the first level, ValueOptions solicited a neurophysiologist, Dr. Barbara Uzzell, to conduct a psychiatric and functional assessment of Wade on September 25, 2000.[1] Based upon this assessment, she diagnosed him with Dysthymic Disorder and Avoidant Personality Disorder. Her assessment of ten categories revealed Wade's moderate impairment in three of the categories, whereas there was mild to no impairment in the other seven. She recommended

---

[1] Keith Lanier, a disability case manager at ValueOptions, requested, via telephone messages, that Wade contact Dr. Uzzell to arrange this assessment. When Wade failed to respond to these messages or to schedule an appointment with Dr. Uzzell, ValueOptions initially denied Wade's request for short-term disability benefits on September 5, 2000. However, when Wade called ValueOptions on September 12, 2000, to express his continued interest in short-term disability benefits and inquire as to how to proceed, ValueOptions reinstated his claim, informed him that a disability reassessment would be permitted, and coordinated a disability assessment with Dr. Uzzell's office.

that Wade continue treatment with Dr. Ty and referred him to Suzi Phelps, a psychologist and therapist. However, because Dr. Uzzell found that Wade's condition did not constitute a disability, she recommended denying benefits. A ValueOptions psychiatrist, Dr. Frank Webster, reviewed Wade's file, agreed with Dr. Uzzell that Wade was not disabled, and upheld Dr. Uzzell's recommendation. On September 26, 2000, ValueOptions contacted Wade via telephone and communicated its decision to deny benefits; it did not share Dr. Uzzell's report with him or send him a denial letter. In this conversation, Wade immediately advised ValueOptions of his desire to appeal and to submit information from his treating physician.

At the second level of the claims process, the ValueOptions Appeals Committee (on which Dr. Webster was a member) reviewed Wade's claim and the initial denial of benefits. They invited Wade's treating physicians to submit a letter and a copy of treatment notes for consideration; on October 4, 2000, Dr. Ty and Dr. Phelps submitted information to the Committee. Nevertheless, the ValueOptions Appeals Committee, on October 6, 2000, affirmed the denial of short-term disability benefits. As it explained in a letter to Wade, "the clinical information provided does not meet ValueOptions' Short-term Disability criteria." Additionally, the letter

explained to Wade that he had the right to appeal to Compaq and provided an address and phone number. The letter did not, however, reference the Plan criteria, explain why his information failed to meet the criteria, advise him of the appeal time-line, or detail the information Wade should submit to perfect his appeal.

Wade's attorney wrote to Compaq on December 5, 2000, requesting various Plan documentation and requesting an appeal. Compaq responded, inviting Wade's attorney to provide any additional information for Compaq to assess in its review of Wade's claim. At this third and final level, the Compaq Welfare Benefits Administrative Committee ("WBAC"), comprised only of Elaine Boddome (a Compaq employee), reviewed Wade's claim in May 2001.[2] Kathy Collier, a Compaq benefits representative responsible for preparing Wade's file to present to WBAC, noticed several errors in ValueOptions' processing of Wade's claim. Therefore, she requested that ValueOptions re-review Wade's case and provide WBAC with additional information. Additionally, WBAC enlisted another psychiatrist, Dr. Conway McDanald, to conduct an additional review of all of the documentation in Wade's file. Subsequently, on August 24,

---

[2] WBAC is the Committee which Compaq, as Plan Administrator, created to administrate and make final short-term disability benefits determinations.

2001, WBAC issued a final denial of short-term disability benefits via a letter to Wade. This letter explained that short-term disability benefits were being denied, because the documentation did not substantiate a claim for short-term disability.

Wade sued in the United States District Court for the Southern District of Texas under 29 U.S.C. § 1132(a)(1)(B).[3] Upon assessing the parties' cross-motions for summary judgment, the district court denied Wade's motion, granted defendant's motion. The court also summarily and sua sponte awarded costs in favor of the defendant.

Wade timely appealed, wherein he argues that the district court erred by: (1) applying the abuse of discretion standard of review to Wade's case, despite an asserted conflict of interest; (2) disregarding the impact of significant procedural errors, which allegedly should have reduced the district court's level of deference to the Plan Administrator; (3) refusing to conclude that the Plan Administrator abused its discretion; and (4) awarding costs to the defendant.

**II.**

---

[3] This provision explains that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the term of his plan. . . ." 29 U.S.C. § 1132(a)(1)(B).

We review a district court's grant of summary judgment in ERISA cases *de novo*, applying the same standard as the district court. Baker v. Metropolitan Life Ins., 364 F.3d 624, 627 (5th Cir. 2004)(citing Performance Autoplex II Ltd. v. Mid-Continent Casualty Co., 322 F.3d 847, 853 (5th Cir. 2003)). A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. (citing Performance Autoplex, 322 F.3d at 853; FED. R. CIV. P. 56(c)). In evaluating the existence of a genuine issue of material fact, we review the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. Id. at 627-28 (citing Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001)).

## III.

Wade argues on appeal that the district court erred when it applied the abuse of discretion standard of review, asserting that it should have given less deference to the Plan Administrator, given the conflict of interest, i.e., that Compaq was both the insurer and administrator of the plan. Whether the district court applied the correct standard of review is a question of law that we review *de novo*. MacLachlan v. ExxonMobil Corp., 350 F.3d 472, 478 (5th Cir. 2003)(citing

7

Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4-447, 47 F.3d 139, 142 (5th Cir. 1995)).

A plan administrator completes two tasks in making a benefit determination: (1) determining the facts underlying the benefit claim; and (2) construing the terms of the plan. The administrator's factual determinations are reviewed for abuse of discretion. Chacko v. Sabre, Inc., 473 F.3d 604, 609-10 (5th Cir. 2006). By contrast, the administrator's construction of plan terms is typically reviewed de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). But where, as here,[4] a plan expressly confers discretion on the plan administrator to construe the plan's terms, the administrator's construction is reviewed for abuse of discretion. Chacko, 473 F.3d at 610 (citing Firestone, 489 U.S. at 115; Gosselink v. AT&T, Inc. 272 F.3d 722, 726 (5th Cir. 2001); Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 295 (5th Cir. 1999)(en banc)).

Where an administrator's decision is "tainted by a conflict of interest," courts implement a sliding scale standard of review. MacLachlan, 350 F.3d at 478. The standard of review does not change, i.e., it remains abuse of discretion; the existence of a conflict of interest is simply

---

[4] The parties do not dispute that the Administrator retained discretion.

a factor to be considered in determining whether the administrator abused its discretion. Vega, 188 F.3d at 296-97. Less deference is given to the Administrator, in proportion to the evidence of conflict. Id. Where "a minimal basis for a conflict is established, the decision is reviewed with 'only a modicum less deference than we otherwise would.'" Lain v. UNUM Life. Ins. Co. of Am., 279 F.3d 337, 343 (5th Cir. 2002)(quoting Vega, 188 F.3d at 301).

Wade concedes that the administrator has the discretion and final authority to determine eligibility for benefits, therefore triggering the abuse of discretion standard. Nonetheless he asserts that because Compaq both administers and insures the plan that an apparent conflict of interest exists; thus, he contends that the district court failed to apply the proper sliding scale standard. Even if a conflict of interest exists under these facts, the district court detailed the appropriate standard of review for such cases and nevertheless granted summary judgment for Compaq, ruling that the Administrator had not abused its discretion in denying Wade's claim. We find no error in the standard of review it employed.

**IV.**

Next, Wade encourages us to heighten our standard of review due to the procedural irregularities in the handling of his claim, which he alleges violated ERISA and the regulations promulgated thereunder, effectively denying him a full and fair review. Wade has cited no direct authority by the Supreme Court or the Fifth Circuit dictating a change in the standard of review based upon procedural irregularities alone, and we see no reason to impose one.

**v.**

Next, Wade argues that procedural violations in the processing of his claim justify the award of short-term disability benefits. Wade points to the alleged following problems in the processing of his claim: (1) ValueOptions' initial denial of his claim (at the first level claims processing) was communicated orally via telephone instead of in writing; (2) ValueOptions' second denial of his claim (at the second level of claims processing) failed to explicate the appropriate information as to the steps to be taken to submit a claim for review, the time limits for review, the specific reasons for the denial of the claim, reference to the specific plan provisions upon which the denial was based, and what information was needed to perfect the claim; (3) the plan relied upon ValueOptions' criteria for disability, as opposed

to the plan's criteria; (4) the plan failed to communicate its final decision to his attorney; (5) the plan created confusion during the pendency of the appeal; (6) the plan failed to notify Wade of its denial of his claims in a timely fashion; and (7) Wade never received the letter that denied his benefits.

"ERISA was enacted to promote the interests of employee and their beneficiaries in employee benefit plans and to protect contractually defined benefits." Firestone Tire, 489 U.S. 101, 113 (1989)(citations omitted)). Therefore, ERISA provides certain minimal procedural requirements upon an administrator's denial of a benefits claim. Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 393 (5th Cir. 1998). These procedures are set forth in 29 U.S.C. § 1133 and the regulations promulgated by the Department of Labor thereunder. Section 1133 provides that:

> every employee benefit plan shall--
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The federal regulations, promulgated pursuant to ERISA and in force at the time explained:

> The notification shall set forth, in a manner calculated to be understood by the claimant-
>     (i) The specific reason or reasons for the adverse determination;
>     (ii) Reference to the specific plan provisions on which the determination is based;
>     (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>     (iv) A description of the plan's review procedures and the time limits applicable to such procedure. . .

29 C.F.R. 2560.503-1(g)(1)(i)-(iv)(2000). Challenges to ERISA procedures are evaluated under the substantial compliance standard. Lacy v. Fulbright & Jaworski, 405 F.3d 254, 256-257 & n.5 (5th Cir. 2005). This means that the "technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." Robinson v. Aetna Life Ins., 443 F.3d 389, 393 (5th Cir. 2006). The purpose of section 1133 is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." Schneider v. Sentry Long Term Disability, 422 F.3d 621, 627-628 (7th Cir. 2005). The "substantial compliance" test also "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient

under the circumstances." Moore v. LaFayette Life Ins. Co., 458 F.3d 416, 436 (6th Cir. 2006). "All communications" may include oral communications. White v. Aetna Life Ins. Co., 210 F.3d 412, 417 (D.C. Cir. 2000) (citing Heller v. Fortis Benefit Ins. Co., 142 F.3d 487, 493 (D.C. Cir. 1998)).

We conclude that the Plan fulfilled the requirements of Section 1133 and accompanying regulations in its processing of Wade's claim. Wade is certainly correct that the *first two levels of review* in the Plan's claims processing arguably failed to substantially comply with ERISA and the regulations promulgated thereunder. At the first level, ValueOptions' communication of the denial of benefits to Wade via telephone did not comply with ERISA, as ValueOptions did not provide the notice in writing. At the second level, the letter denying benefits sent to Wade did not comply with ERISA, as it did not list the plan criteria, or indicate the specific reasons why Wade's clinical information failed to satisfy the criteria. Further, it also did not specify what information Wade was required to submit in order to perfect his appeal.

However, at the third level of review, Compaq, as administrator, required ValueOptions to re-review the file and solicited another independent physician, Dr. McDanald, to review it, as well. The administrator, when making its final

13

determination to deny Wade's benefits claims, had in-hand all of the documentation regarding Wade's claim. Additionally, the letter that WBAC sent to Wade substantially complied with ERISA.

Section 1133 and its corresponding regulations require that the Plan: (1) provide adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator. We find that the Plan did meet these requirements. The statute and regulations do not require compliance with Section 1133 *at each and every level* of review of a Plan's internal claims processing. The end goal of judicial intervention in ERISA is not to correct problems at every level of plan administration, but to encourage resolution of the dispute at the administrator's level before judicial review. *See* Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 393 (5th Cir. 2006) (noting the Fifth Circuit has a "policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court."). Here, although the Plan's claims processing at the first two levels of review did not comply with Section 1133, the final level of review, and the most

14

relevant one, substantially complied and intended to correct the disputed procedural and technical errors below. Therefore, we find that Wade was provided with "full and fair review" of his claims based on an examination of all communications at all levels between the administrator and the beneficiary. The communications, as a whole, and especially at the administrator's level, constituted a meaningful dialogue between the beneficiary and administrator despite technical violations. *See* Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 634-636 (10th Cir. 2003) (noting that the purpose of ERISA procedural provisions is to create a meaningful dialogue and as long as a meaningful dialogue existed, there is substantial compliance).

Even were we to decide otherwise, "[f]ailure to fulfill procedural requirements generally does not give rise to a substantive damage remedy." Hines v. Massachusetts Mutual Life Ins. Co., 43 F.3d 207, 211 (5th Cir. 1995). There is no reason to deviate from this general rule in this case.

**VI.**

We now turn our attention to Wade's assertion that the district court erred in ruling that the Administrator did not abuse his discretion in denying Wade's claim for benefits. Because the district court granted summary judgment in the

defendant's favor, we review *de novo*, using the same standard as the district court. Wade does not challenge the Administrator's interpretation of any plan term; instead he only asserts that his condition qualifies as a disability. Accordingly, the case hinges upon the Administrator's factual determinations, and we therefore review this decision for an abuse of discretion. Pierre v. Connecticut General Life Ins. Co./Life Ins. Co. of North America, 932 F.2d 1552, 1562 (5th Cir. 1991)(". . . for factual determinations, under ERISA plans, the abuse of discretion standard of review is the appropriate standard."); Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 598 (5th Cir. 1994)(disability is more factual in nature than interpretive).

Abuse of discretion is synonymous with the arbitrary and capricious standard. Aboul-Fetough v. Employee Benefits Comm., 245 F.3d 465, 472 (5th Cir. 2001). To assess abuse of discretion, we "focus on whether the record adequately supports the administrator's decision." Vega, 188 F.3d at 298. To avoid reversal in the summary judgment context, the Administrator's decision must be supported by substantial evidence in the administrative record, which is evidence that a reasonable mind might accept as sufficient to support a conclusion. High v. E-Systems, Inc., 459 F.3d 573, 576 (5th

Cir. 2006). *See also* <u>Ellis v. Liberty Life Assur. Co. of Boston</u>, 394 F.3d 262, 273 (5th Cir. 2004)(defining substantial evidence as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); <u>Meditrust Fin. Services Corp. v. Sterling Chemicals, Inc,</u> 168 F.3d 211, 215 (5th Cir. 1999) ("A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence."). We should not substitute our judgment for that of the administrator. *Cf.* <u>Ellis</u>, 394 F.3d at 273.

As mentioned above, when reviewing for abuse of discretion, we take into account any conflict of interest by implementing a sliding scale standard. <u>Vega</u>, 188 F.3d at 296-97. A potential conflict such as the one presented here, where an Administrator serves the dual role of both administrator and insurer, results in only a "modicum less deference" than would otherwise be afforded. *See* <u>Vega</u>, 188 F.3d at 301.

The Plan provided short-term disability benefits only for employees who suffer a medical condition that "prevents the Employee from performing each of the material duties of his or her regular occupation." The record is replete with evidence that Wade's depression did not qualify as a disability under

this definition. Dr. Uzzell determined that Wade suffered only moderate impairment in three of ten functional areas; he suffered mild to no impairment in the other seven. Dr. Webster reviewed and agreed with Dr. Uzzell's assessment. The administrator requested that ValueOptions re-review Wade's file again, and ValueOptions complied. Dr. McDanald, an independent physician, reviewed all of the documentation and agreed with the denial of benefits. Further, Wade's treating physician, Dr. Ty, rated Wade's ability to make decision regarding daily living, relationships, and life as "good."[5]

Even taking into account any alleged conflict of interest of the Administrator, we affirm the district court's grant of summary judgment in favor of the defendant-appellee. There is substantial evidence in the record to support the Administrator's decision to deny benefits. Its decision, therefore, was not arbitrary and capricious, and likewise, not an abuse of discretion.

## VII.

Finally, Wade appeals the district court's award of costs in favor of the defendant. We review the district court's

---

[5]    And even if Wade's treating physician had concluded otherwise, ERISA does not mandate that plan administrators must accord special deference to the opinions of treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003); Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 233 (5th Cir. 2004).

award in ERISA cases for an abuse of discretion. <u>Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan</u>, 97 F.3d 822, 832 (5th Cir. 1996).

ERISA provides that "[i]n any action under this subchapter. . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The district court uses the "prevailing party" test from Fed. R. Civ. P. 54(d) to decide the award of costs, thereby following <u>Salley v. E.I. DuPont de Nemours & Co.</u>, 966 F.2d 1011, 1017 (5th Cir. 1992). In <u>Salley</u>, an ERISA case, the court utilized the <u>Bowen</u> five factor test[6] to judge the award of attorney's fees, but judged the award of costs based on the "prevailing party" test from Fed. R. Civ. P. 54(d). A subsequent case followed <u>Salley</u>'s approach, see <u>Tolson v. Avondale Indus., Inc.</u>, 141 F.3d 604, 611 (5th Cir. 1998).

---

[6] The following five factors were enumerated for consideration in ERISA cases when shifting attorney's fees: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position. <u>Iron Workers Local No. 272 v. Bowen</u>, 624 F.2d 1255, 1266 (5th Cir. 1980). Absent is any requirement that the party under consideration for fee-shifting under this test be the prevailing one. See <u>Gibbs v. Gibbs</u>, 210 F.3d 491, 501 (5th Cir. 2000).

However, this analysis arguably conflicts with our recent cases that award costs based on the Bowen five factor test. *See* Lain v. UNUM Life Ins. Co. Of America, 279 F.3d 337, 347 (5th Cir. 2002) ("When determining whether to award attorneys' fees and costs, the district court should consider the following [Bowen] factors") (emphasis added). *See also* Gibbs, 210 F.3d at 505 ("In sum, the first, second, third, and fifth [Bowen] factors all counseled in favor of disallowing General American's request for attorneys' fees and costs from Appellant.") (emphasis added); Roig v. Ltd. Long Term Disability Program, 275 F.3d 45, 2001 WL 1267475 *5 (5th Cir. Oct. 9, 2001) (per curiam) (unpublished) ("When exercising [29 U.S.C. § 1132(g)(1)] discretion, the court should consider the following [Bowen] factors").

When there are conflicting panel decisions, the earliest panel decision controls. Camacho v. Texas Workforce Comm'n, 445 F.3d 407, 410 (5th Cir. 2006). Salley is the earliest panel decision to deal directly with the award of costs under ERISA. While the pre-Salley case-law never explicitly applied the Bowen test to an award of costs, a pre-Salley case did assess the award of costs, along with attorney's fees, under the ERISA's fee-shifting provision and not under Fed. R. Civ. P. 54(d). *See* Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th

20

Cir. 1983). However, in that case, the court only applied the Bowen test to the award of attorney's fees and not costs. Id. Since Salley conflicts with this controlling prior case-law that analyzed costs and attorney's fees both under ERISA's fee-shifting provision and not under Fed. R. Civ. P. 54(d), to the extent Salley held that an award of costs under ERISA is based in Fed. R. Civ. P. 54(d) does not control our case here.[7] Nonetheless, before Salley, it was an open question whether the "prevailing party" test, instead of the Bowen factors test, could be adopted for awards of costs and attorney's fees under ERISA in certain situations. *Cf.* Holder v. Prudential Ins. Co. of America, 951 F.2d 89, 91-92 (5th Cir. 1992). Therefore, we read Salley now as establishing, for ERISA's fee-shifting provision, a "prevailing party" test, analogous to the test under Fed. R. Civ. P. 54(d), for the award of costs. As Salley is the first case to discuss the award of costs under ERISA, Salley's application of the "prevailing party" test controls this case.

---

[7] Subsequent cases have similarly reached this conclusion, Fed. R. Civ. P. 54(d) is not applied when the claims are subject to an express statutory fee-shifting provision, such as ERISA's fee-shifting provision, 29 U.S.C. § 1132(g)(1), which explicitly covers "costs of action." See FED. R. CIV. P. 54(d) ("Except when express provision therefor is made either in a statute of the United States . . ."); Gibbs v. Gibbs, 210 F.3d 491, 506 n. 13 (5th Cir. 2000) (noting the different treatment of fees and costs for different parties, because some parties' claims were ERISA claims and subject to 29 U.S.C. § 1132(g)(1), and other parties' claims were state claims and subject to Fed. R. Civ. P. 54(d)).

Even though the district court did not cite to the ERISA fee-shifting provision, 29 U.S.C. § 1132(g)(1), as the source for its authority to award costs to the "prevailing party," the district court's award of costs under a "prevailing party" test is in accordance with <u>Salley</u>, and is, therefore, not an abuse of discretion. Accordingly, we affirm the district court's award of costs to the defendant.[8]

## VIII.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendant-appellee. We AFFIRM the district court's award of costs to the defendant-appellee.

---

[8] Under recent case law, a district court would abuse its discretion if it did not consider the <u>Bowen</u> factors before awarding costs and attorney's fees under ERISA. Cf. <u>Riley v. Administrator of Supersaver 401K Capital Accumulation Plan</u>, 209 F.3d 780, 782-783 (5th Cir. 2000)("[The District Court] should consider and explicate the five Bowen factors, and . . . consider relevant non-<u>Bowen</u> factors, if there are any."); <u>Todd v. AIG Life Ins. Co.</u>, 47 F.3d 1448, 1458-459 (5th Cir. 1995). Only an en banc determination could resolve this discrepancy between the recent cases and <u>Salley</u>. See <u>United States v. Rodriguez-Jaimes</u>, 481 F.3d 283, 288 (5th Cir. 2007).