# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2012

No. 12-30299

Lyle W. Cayce
Clerk

BURNELL SHEDRICK,

Plaintiff - Appellant

v.

MARRIOTT INTERNATIONAL, INCORPORATED; AETNA LIFE INSURANCE
COMPANY; MARRIOTT INTERNATIONAL, INCORPORATED LONG-TERM
DISABILITY PLAN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
2:11-cv-00820

Before DeMOSS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Burnell Shedrick filed suit against Aetna Life Insurance Company
("Aetna") and Marriott International, Inc. ("Marriott") alleging that he was
wrongfully denied disability benefits under a benefits plan governed by the
Employee Retirement Income Security Act of 1974 ("ERISA"). The district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-30299

granted summary judgment in favor of Aetna and Marriott. For the following reasons, we affirm.

BACKGROUND

Shedrick began working for Marriott in 1973. By 2009 he was the director of engineering at a Marriott hotel in Philadelphia, Pennsylvania. As a Marriott employee, Shedrick was enrolled in an ERISA welfare plan (the "plan") providing short and long term disability benefits. The plan is administered by Aetna and designates Aetna as the plan fiduciary for purposes of ERISA. Under the plan, Aetna has "discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms."

To qualify for disability benefits under the plan, employees must satisfy the plan's test of disability. During the first twenty-four months following the onset of a disability, the plan's test of disability requires that an employee is unable to perform "the material duties of [his] own occupation" solely because of an illness or injury. After benefits have been payable for twenty-four months, the plan's test of disability requires that an employee is "unable to work at any reasonable occupation" solely because of an illness or injury. Employees are ineligible for benefits when they no longer meet the plan's test of disability, or when they fail to provide proof that they meet the plan's test of disability.

On October 3, 2009, Shedrick injured his back while attempting to lift his dying wife out of bed. On November 9, 2009, as a result of his back injury, Shedrick stopped going to work and filed a claim for short term disability benefits. In support of his claim, Shedrick submitted an MRI report and an attending physician statement ("APS") from Dr. Samuel Vrooman. The MRI report stated that Shedrick had "[a] central to left sided extruded disk herniation at L5-S1 and compression of the traversing left S1 nerve root." In his APS, Dr. Vrooman placed restrictions on Shedrick including no lifting, no bending, no

2

prolonged sitting and no prolonged walking. Dr. Vrooman concluded that Shedrick was currently unable to work, but that he should be able to return to work in a "full duty" capacity by February 8, 2009, a date which had already passed. The Aetna claims adjuster saw the error and noted that Dr. Vrooman would need to clarify Shedrick's anticipated return-to-work date.

Aetna approved Shedrick's claim for short term disability benefits from November 9, 2009 to November 30, 2009 and changed his return-to-work date to December 1, 2009 pending clarification from Dr. Vrooman. Aetna sent Shedrick a letter stating that he was entitled to $1,656.96 in gross benefits a week and explaining that additional medical information was necessary for him to receive benefits beyond November 30.

Shedrick did not provide Aetna with supplemental medical information before November 30. In a letter dated December 6, 2009, Aetna informed Shedrick that based on the clinical information it had received, his claim was closed effective December 1, 2009. The letter stated that Shedrick should call Aetna if he had been unable to return to work on December 1 and again explained that any request for additional short term disability benefits would "require updated supporting clinical information."

On February 10, 2010, Aetna received an updated APS from Dr. Vrooman. Dr. Vrooman's primary diagnosis was lower back pain and he concluded that Shedrick was still unable to work. He imposed many of the same physical restrictions provided in the original APS, including "no lifting, no bending, no climbing, no kneeling, no prolonged sitting or standing [and] limited walking." Dr. Vrooman also noted that Shedrick had been prescribed Vicodin for his pain and that the drug "can impair mental function." After reviewing the updated APS, Aetna extended Shedrick's short term disability benefits through March 9, 2010, and referred the claim to a vocational specialist for review.

No. 12-30299

On March 1, 2010, Aetna informed Shedrick that additional information was needed to determine whether he was eligible to continue receiving benefits. In Shedrick's file, the claims administrator noted that the typical recovery time for Shedrick's injury is seven to twenty-one days, up to a maximum of fifty-six days, and that Shedrick's recovery appeared to be "prolonged." The administrator also observed that there had been "limited exam findings" since the initial MRI and "limited treatment" prescribed. The administrator concluded that the existing documentation only supported Shedrick's disability status through February 1, 2010. Aetna requested various pieces of information from Shedrick, including his job description, the identity of his current attending physician, the treatment note from his last office visit, and the date of his next visit. Aetna informed Shedrick his benefits would only be payable through February 1, 2010 unless he provided the requested information. Shedrick sent the requested information to Aetna.

On March 2, 2010, Aetna received a note from Shedrick's New Orleans physician, Dr. John Watermeier.[1] The note stated that Shedrick was "totally, temporarily disabled" and that he had a follow up appointment scheduled with Dr. Watermeier for June 4, 2010. Aetna responded to Dr. Watermeier's office, stating that more information was necessary to extend Shedrick's disability claim. Aetna requested Shedrick's "initial consult evaluation," "treatment plan," "restrictions and limitations," and a "return to work date." Dr. Watermeier's office responded that it needed a signed authorization from Shedrick before it could release that information.

In a letter dated March 4, 2010, Aetna informed Shedrick that the medical records received from Dr. Watermeier were insufficient to "support ongoing impairment beyond 02/01/2010." Shedrick's file shows that the administrator

---

[1] Shedrick moved from Philadelphia to New Orleans during the claim process.

based her decision on the "limited current medical [information]" supporting the diagnosis and the lack of information as to Shedrick's physical restrictions and the treatment he was receiving for the injury. Aetna's letter also informed Shedrick that it had requested additional information from Dr. Watermeier's office, but that his staff would not release the information without a signed authorization. Aetna suggested that Shedrick fill out the authorization and ask Dr. Watermeier to submit additional medical information. Aetna stated that it would consider any additional information Shedrick wished to submit and provided a list of information that would help Aetna evaluate his claim.

On March 19, 2010, Aetna received an APS from Dr. Watermeier. Dr. Watermeier's primary diagnosis was "displaced lumbar disc" and he concluded that Shedrick was "temporarily disabled." He noted that Shedrick was experiencing limited motion, mild spasms, mild pain in the cervical area, and moderate pain in the lumbar area. In the section of the APS titled "Objective findings that substantiate impairment," Dr. Watermeier wrote only that Shedrick was "temporarily disabled pending completion of workup." The claims administrator reviewed the APS and noted that Dr. Watermeier did not provide a treatment plan or details about the workup that he planned to conduct.

On April 14, 2010, Aetna received an updated APS from Dr. Watermeier. Dr. Watermeier again noted that Shedrick was experiencing symptoms of "muscle spasms, limited motion, mild pain in cervical area, [and] moderate pain in lumbar area," and concluded that Shedrick was "temporarily disabled." In the section asking what "medical restrictions/limitations" were placed on Shedrick, Dr. Watermeier wrote that Shedrick was "temporarily disabled pending completion of work-up." The section of the APS asking for "Objective findings that substantiate impairment" was left blank. The claims administrator reviewed the updated APS and concluded that there was "a lack of measurable,

quantifiable finkdings [sic] by physical examination or diagnostic test resulsts [sic] to support a functional disability" from Shedrick's "light duty" job.[2]

Aetna arranged a vocational assessment for Shedrick with vocational counselor Mario Scopacasa. In his report dated May 4, 2010, Scopacasa identified several reasons why be believed Shedrick was not ready to return to work. These reasons included Shedrick's "current physical restrictions" and his "reliance on pain medications." They also included Scopacasa's belief that Shedrick "view[ed] himself as disabled despite his very active lifestyle" and that Shedrick was "focused on enjoying his current lifestyle." Scopacasa recommended that Aetna obtain a return-to-work prognosis from Shedrick's attending physician and also that Shedrick receive a pain management evaluation in order to wean him off his pain medications.

In a letter dated June 3, 2010, Aetna denied Shedrick's claim for additional benefits on the basis that he did not satisfy the plan's test of disability, which required that he was unable to perform the material duties of his own occupation. The letter stated that Shedrick's medical records "as a whole do not support impairment from light physical demands." The letter acknowledged Dr. Watermeier's March 1, 2010 office notes stating that Shedrick needed to "avoid repetitive stooping or bending and repetitive lifting of objects over 10-20 pounds as well as prolonged sitting or standing in the same position for 45 minutes, plus/minus 15 minutes, without being able to move around or change position," and agreed that those restrictions are "reasonable" given Shedrick's "reported diagnosis combined with [his] age and average wear and tear." However, because Shedrick's job had been classified as a "light" duty

---

[2] Aetna originally classified Shedrick's position as a "medium duty" occupation based on a job description provided by Shedrick. Aetna later obtained a detailed description of Shedrick's position and reclassified it as a "light duty" occupation after determining that it was most analogous to job # 950.131-014 in the Department of Labor's Dictionary of Occupation Titles.

No. 12-30299

occupation, Aetna concluded that his occupational demands were not greater than his physical restrictions. Aetna informed Shedrick of his right to appeal the benefits denial.

Shedrick retained counsel on September 1, 2010. His attorney initiated an appeal of Aetna's decision and sent Aetna supplemental medical records supporting Shedrick's claim. The claims administrator determined that the supplemental records had already been reviewed and asked Shedrick's attorney whether he planned to submit any additional medical information. On October 20, 2010, Shedrick's attorney called the claims administrator and told her that as of October 6, 2010, Aetna had all of the documentation that was going to be submitted in support of Shedrick's appeal. Aetna confirmed this in a letter to Shedrick's attorney dated November 19, 2010.

Nevertheless, Shedrick's attorney submitted additional records from Shedrick's treating physicians on December 9, 2010 and a Department of Labor functional work capacity evaluation on December 14, 2010. The work capacity evaluation, which was filled out by Dr. Watermeier and dated October 20, 2010, stated that Shedrick could sit for two hours, walk for one hour, stand for one hour, twist for 30 minutes, operate a motor vehicle at work for two to four hours, and operate a motor vehicle to/from work for two to four hours per day. The evaluation stated that Shedrick's restrictions were permanent and that he was incapable of performing his "usual job" and unable to work an eight hour day with restrictions. Although the form asked for medical reasons supporting those conclusions, none were provided. The form also asked whether Shedrick was limited in his ability to push, pull, lift, squat, kneel, and engage in repetitive wrist and elbow movements, but no limitations were indicated.

On December 30, 2010, Aetna referred Shedrick's claim to orthopedic specialist Dr. James Wallquist for review. As part of the review process, Dr. Wallquist examined Shedrick's medical records and spoke with Dr. Vrooman and

No. 12-30299

Dr. Watermeier. According to Dr. Wallquist, Dr. Vrooman stated that he last examined Shedrick on February 1, 2010 and that he believed Shedrick had been unable to perform his job between November 9, 2009, and February 1, 2010. Dr. Vrooman also stated that he had no opinion on Shedrick's disability status after February 1, 2010, the point at which Shedrick stopped receiving disability benefits.

Dr. Watermeier stated that he had last examined Shedrick on December 6, 2010, at which time Shedrick "had expressed subjective back and hip pain and was using a walking cane for external support." Dr. Watermeier also stated:

> The physical exam revealed moderate pain with range of motion. [Shedrick had] 75% of flexion and 10-20 degrees of rotation. Tension signs were not tested. No neurological deficit was recorded. [Shedrick] was diagnosed with lumbar spinal stenosis. It was felt that [Shedrick's] condition was stable. No surgery was recommended. [Shedrick] did not have [a] pain management evaluation or treatment. [Shedrick] was to continue on Neurontin, [a] walking cane, and Xodol, a narcotic.

Dr. Watermeier told Dr. Wallquist that he believed Shedrick "was unable to work [his] own occupation for the entire time frame under consideration."[3]

On January 4, 2011, Dr. Wallquist issued a report concluding as follows:

> [B]ased on a review of the medical documentation provided pertaining to the diagnosis of low back pain, lumbar disk displacement, and spinal stenosis, and following peer-to-peer telephonic conference with Drs. Vrooman and Watermeier, there was a lack of "significant objective" clinical documentation by physical examination to correlate with the diagnostics and [Shedrick's] subjective complaints to support a functional impairment that would preclude [Shedrick] from performing the core elements of his own occupation described as a Director of Engineering Operations for Marriott, a light physical demand category requiring the ability to occasionally lift 20 pounds maximum from 11/9/09 through 12/30/[10]. The restrictions and

---

[3] The time period under consideration was November 9, 2009 to December 30, 2010.

limitations assigned by Dr. Watermeier on 6/4/10 indicated [Shedrick] was capable of lifting 10-20 pounds, which is in compliance with a light physical demand level.

Dr. Wallquist's report also noted that "[t]here was no indication by clinical testing that [Shedrick] was experiencing any cognitive impairment that would impact [his] ability to work" between November 9, 2009 and December 30, 2010.

In a letter dated January 6, 2011, Aetna notified Shedrick that his appeal had been denied. The letter provided a list of thirty-two documents that were considered during the review process, a summary of Dr. Wallquist's findings, and stated that Shedrick's appeal was being denied because there was "insufficient medical evidence" to show that Shedrick met the plan's test of disability. In response to the denial letter, Shedrick's attorney submitted additional documentation in support of Shedrick's claim, including a copy of Shedrick's job description and a note from Dr. Watermeier stating that Shedrick was totally impaired. Shedrick's attorney also submitted copies of Shedrick's prescriptions for Xodol, Neurontin, and Citalopram, as well as descriptions of the side effects of those drugs. Aetna responded with a letter dated April 7, 2011 reiterating statements made in its January 6, 2011 letter that Shedrick had exhausted his appeal procedures under the plan and that he had a right to file a lawsuit challenging the denial of benefits.

On March 10, 2011, Shedrick filed suit in Louisiana state court naming Aetna and Marriott as defendants.[4] Soon thereafter, the defendants removed the case to federal court on the basis of federal question and diversity jurisdiction.[5] Shedrick asserted a breach of contract claim, alleging that Aetna wrongly denied

---

[4] Shedrick later amended his complaint to include Marriott International, Inc. Long-Term Disability Plan as a defendant.

[5] 29 U.S.C. § 1132(a)(1)(B) enables an ERISA plan beneficiary to file a lawsuit to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

No. 12-30299

his claim for benefits under the plan. Both sides filed a motion for summary judgment. On February 22, 2012, the district court granted summary judgment in favor of Appellees. The court found that Aetna did not abuse its discretion in denying Shedrick's claim for benefits because the decision was reasonable and was supported by evidence in the administrative record. Shedrick timely appealed.

## STANDARD OF REVIEW

"Standard summary judgment rules control in ERISA cases." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (internal quotation marks omitted). This court "review[s] a district court's grant of summary judgment in ERISA cases de novo, applying the same standard as the district court." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 153 (5th Cir. 2009) (internal quotation marks omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When the ERISA plan vests the fiduciary with discretionary authority to determine eligibility for benefits under the plan or to interpret the plan's provisions, 'our standard of review is abuse of discretion.'" *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 269 (5th Cir. 2004) (quoting *Tolson v. Avondale Indus.*, 141 F.3d 604, 608 (5th Cir. 1998)). The parties do not dispute that Aetna was the plan fiduciary and that it had discretion to interpret the plan and to determine whether beneficiaries were entitled to benefits.

## DISCUSSION

Shedrick makes two arguments on appeal. He argues that (1) Aetna violated the ERISA requirement that it provide a full and fair review of its decision denying disability benefits, and (2) that the decision denying disability benefits was not supported by substantial evidence and was therefore an abuse of discretion. We discuss each argument in turn.

10

No. 12-30299

*1. Full and Fair Review*

ERISA requires that a plan administrator follow certain procedures when denying a claim for benefits. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007). "These procedures are set forth in 29 U.S.C. § 1133 and the regulations promulgated by the Department of Labor thereunder." *Id.* Section 1133 provides that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).

"Challenges to ERISA procedures are evaluated under the substantial compliance standard." *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006). Under that standard, "technical noncompliance with ERISA procedures will be excused so long as the purposes of section 1133 have been fulfilled." *Id.* at 393 (internal quotation marks omitted). "The purpose of section 1133 is to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Lafleur*, 563 F.3d at 154 (internal quotation marks omitted). "Substantial compliance requires meaningful dialogue between the beneficiary and administrator." *Id.* (internal quotation marks omitted). The ERISA regulations promulgated by the Department of Labor "provide insight into what constitutes full and fair review." *Id.*

Shedrick argues that Aetna did not provide a full and fair review of the decision denying benefits because it denied Shedrick's appeal without identifying Dr. Wallquist and allowing Shedrick to rebut his January 4, 2011 report concluding that Shedrick was not eligible for additional benefits.[6] He notes that Aetna closed his appeal a day after receiving Dr. Wallquist's report and argues

---

[6] Shedrick notes that Aetna referred to Wallquist as an "independent peer physician" in the January 6, 2011 letter denying his appeal, but did not identify him by name.

11

that "[t]his hasty determination prevented the possibility of a meaningful dialogue between Shedrick and [Aetna]." He also argues that Aetna failed to adequately consider the additional medical information he provided after the appeal process was completed, which "prevented a full and fair review of the evidence."[7] Aetna and Marriot argue that Shedrick was provided numerous opportunities to support his claim during the appeal process and that neither the law nor the plan's appeal procedures require that a claimant be allowed to provide rebuttal evidence once an appeal is complete.

As noted above, substantial compliance with 26 U.S.C. § 1132 requires that there was a "meaningful dialogue between the beneficiary and administrator" during the review process. *Lafleur*, 563 F.3d at 154 (internal quotation marks omitted). The facts show that Aetna sent Shedrick a letter dated March 4, 2010 stating that additional benefits were being denied because the medical records from Dr. Watermeier "do[ ] not support ongoing impairment," and providing a list of information that Shedrick should consider submitting in support of his claim. After that letter was sent, Shedrick took advantage of multiple opportunities to provide supplemental information supporting his claim. In its letter dated June 3, 2010, Aetna stated that benefits were being denied because Shedrick's medical records "as a whole do not support impairment from light physical demands." Shedrick's attorney requested an appeal of Aetna's decision on September 1, 2010 and provided additional medical records in support of Shedrick's claim on October 6, 2010. On or around October 20, 2010, Aetna spoke with Shedrick's attorney and was told that Aetna had all of the information that would be submitted in support of the appeal.

---

[7] Shedrick also asserts that he was denied a full and fair review because Aetna requested an additional vocational report on February 18, 2011 and did not make that report part of the administrative record. By that point, however, Shedrick's appeal had been denied, and therefore we need not decide whether failing to include the report would have affected the review process.

No. 12-30299

Nevertheless, the attorney submitted additional information on December 9, 2010 and December 14, 2010, and Shedrick does not argue that this information was not considered in the appeal. Aetna notified Shedrick that his appeal had been denied on January 6, 2011.

Given these facts, we see no basis to conclude that Shedrick did not engage in a meaningful dialogue with the administrator during the review process. Aetna explained more than once why additional benefits were being denied and Shedrick had multiple opportunities to provide supplemental documentation during the review process, which lasted over four months. Further, there does not appear to be relevant case law or regulations for the proposition that Aetna violated ERISA's full and fair review requirement by failing to consider evidence submitted after Shedrick's appeal was closed or by not allowing Shedrick to rebut the report by Dr. Wallquist. *See Lafleur*, 563 F.3d at 154 ("ERISA regulations provide insight into what constitutes full and fair review."). Indeed, at least one circuit has found that ERISA's full and fair review requirement does not require plan administrators to allow claimants to rebut medical reports created during the appeal process before making a final decision on the appeal. *See Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1165–68 (10th Cir. 2007) ("Permitting a claimant to receive and rebut medical opinion reports generated in the course of an administrative appeal . . . would set up an unnecessary cycle of submission, review, re-submission, and re-review.").

Shedrick also argues that he was denied a full and fair review because Aetna failed to seek an opinion from a pain management expert as recommended by vocational counselor Mario Scopacasa. In his report, Scopacasa recommended that Aetna "[c]onsider a pain management evaluation to wean [Shedrick] off his pain medications and his reports of not being able to focus on activities." Shedrick points to 29 C.F.R. § 2560.503-1(h)(3)(iii), which requires that when

No. 12-30299

"deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."[8]

The underlying injury causing Shedrick to seek disability benefits was a back injury, and when reviewing its decision denying benefits Aetna consulted Dr. Wallquist, a specialist in orthopedic surgery. This satisfies the "substantial compliance" standard under which these regulations are reviewed. Shedrick provides no authority, nor did we find any, suggesting that the vocational counselor's recommendation that Aetna "consider" obtaining a pain management evaluation triggered a duty to hire a pain management expert under 29 C.F.R. § 2560.503-1(h)(3)(iii).

*2. Abuse of Discretion*

Shedrick also challenges Aetna's substantive denial of his claim, specifically its determination that he was ineligible for additional benefits because he failed to satisfy the plan's test of disability. This is a factual question that we review for abuse of discretion. *See Wade*, 493 F.3d at 540 ("Wade does not challenge the Administrator's interpretation of any plan term; instead he only asserts that his condition qualifies as a disability. Accordingly, the case hinges upon the Administrator's factual determinations, and we therefore review this decision for an abuse of discretion."); *see also Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004) ("[A] plan administrator's factual determinations are always reviewed for abuse of discretion.").

"Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.'" *Corry v. Liberty Life Assurance Co.*, 499 F.3d 389, 397 (5th Cir. 2007)

---

[8] This regulation applies to ERISA plans providing disability benefits by way of 29 C.F.R. § 2560.503-1(h)(4).

(quoting *Ellis*, 394 F.3d at 273). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis*, 394 F.3d at 273 (internal quotation marks omitted). A decision is arbitrary if made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996). If the administrator's decision denying a claim for benefits is supported by some concrete evidence in the administrative record, the administrator did not abuse its discretion. *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002); *see also McDonald v. Hartford Life Group Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010).

As discussed above, Shedrick was eligible for short and long term disability benefits for up to twenty-four months if he satisfied the plan's test of disability, which required that he was unable to "perform the material duties of [his] own occupation" because of illness or injury. Under the plan, Shedrick was no longer eligible to receive benefits when, among other things, he no longer met the test of disability, or he failed to provide proof that he met the test of disability. Aetna ultimately denied Shedrick's claim on the basis that there was insufficient medical evidence to show that he met the plan's test of disability.

The district court concluded that the following evidence in the administrative record sufficiently supports Aetna's decision denying additional benefits: (1) Dr. Wallquist's January 4, 2011 report; (2) excerpts from Scopacasa's report stating that Shedrick had an active lifestyle and that he was able to help a friend with her real estate work; (3) that no treating physician reported that Shedrick's pain medications caused cognitive impairment; (4) medical documents from Shedrick's treating physicians stating that he could lift 10–20 pounds; and (5) that many of the forms submitted by Shedrick's

treating physicians were not complete or provided conclusions without stating the bases for those conclusions.

Shedrick argues that Aetna's decision is not supported by substantial evidence. He notes that Dr. Vrooman and Dr. Watermeier both concluded that he was unable to perform his own job and asserts that Mario Scopacasa, the vocational counselor, "was unable to recommend that Shedrick could return to his own occupation." He also argues that Aetna failed to consider that his job requires that "he be alert at all times to provide for the safety of [hotel] patrons" and that the medications he was taking would prevent him from satisfying that requirement.[9] Shedrick also notes that Dr. Wallquist concluded he could perform the "core elements" of his job, but did not state that he could perform the "material duties" of his job.

We agree with the district court's conclusion that Aetna's decision to deny benefits is supported by substantial evidence. Dr. Wallquist's January 4, 2011 report clearly concludes that there was insufficient medical evidence "to support a functional impairment that would preclude [Shedrick] from performing the core elements of his own occupation." While Shedrick notes that Dr. Vrooman and Dr. Watermeier both believed Shedrick was incapable of working, Dr. Vrooman stated that he had no opinion on Shedrick's disability status beyond February 1, 2010, the point at which Shedrick stopped receiving benefits. Also,

---

[9] Shedrick also argues that both Aetna and the district court erred in relying on a medical treatise as evidence supporting the initial denial of benefits because that treatise was not included in the administrative record. Shedrick refers to a note in his claim file made on March 1, 2010, which appears to cite a source named "MDA" as stating that the typical recovery time for Shedrick's injury is seven to twenty-one days, and a maximum of fifty-six days. Under that entry, the administrator, presumably relying on the MDA source, noted that Shedrick's recovery appeared "prolonged." Shedrick is correct that when assessing factual questions, the district court is limited to considering evidence in the administrative record. *See Robinson*, 443 F.3d at 394–95. However, the district court only referenced the administrator's note in its recitation of the facts, not when discussing the evidence that supports Aetna's decision.

the fact that many of the forms submitted by Shedrick's treating physicians were not complete or provided conclusions without the bases for those conclusions provides support for Aetna's decision to credit Dr. Wallquist's conclusions over those of Dr. Watermeier. Shedrick also points to the portion of Scopacasa's report stating that Shedrick's "reliance on pain medications" was one of the reasons he was not ready to return to work. However, Dr. Wallquist's report stated there was no clinical testing showing that Shedrick was experiencing cognitive impairment that would prevent him from working, and Shedrick does not point to any such testing in the administrative record. Furthermore, Scopacasa's report also stated that Shedrick was unable to return to work in part because he "views himself as disabled despite his very active lifestyle" and he was "focused on enjoying his current lifestyle."

Taken together, the evidence cited by the district court constitutes substantial evidence supporting Aetna's decision to deny Shedrick's claim for additional disability benefits. Accordingly, Aetna did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.